578 So.2d 718 (1991)
Jerome BOYD, Appellant,
v.
The STATE of Florida, Appellee.
No. 88-1093.
District Court of Appeal of Florida, Third District.
January 8, 1991.
*719 Eric M. Cohen, Coral Gables, for appellant.
Robert A. Butterworth, Atty. Gen., and Charles M. Fahlbusch, Asst. Atty. Gen., for appellee.
Before HUBBART, FERGUSON and COPE, JJ.

ON MOTION FOR REHEARING
FERGUSON, Judge.
Boyd was charged with numerous offenses stemming from a two-week crime spree which began two days before Christmas 1986 and ended with his arrest on January 6, 1987. All the charges were the subject of six informations  five covering *720 incidents occurring on separate dates, and the sixth a recap of all the first five informations under a RICO charge.
The facts as alleged by information are as follows: On December 23, 1986, the defendant and an unidentified companion used a gun to deprive two women of their money and automobile. On January 1, 1987, Boyd, together with Calvin Washington and Curtis Jackson, robbed three persons at gunpoint. A car stolen on the morning of January 5th was used later that evening by Washington, Jackson, and an unidentified male to rob a woman of her jewelry at gunpoint. The next day, Boyd took a Cadillac from an elderly woman; two hours later, the Cadillac was used to take jewelry and money from an elderly couple in a parked car.
On that same evening, Boyd, Washington, and a third man, known only as Pee Wee, robbed another couple at gunpoint. Responding to a BOLO, detectives identified and moved in on the stolen Cadillac, then occupied by Boyd, Washington, and Jackson. When police officers ordered the passengers out, the driver, Boyd, accelerated the vehicle in their direction in an attempt to flee. Officer Michael O'Shea, who had to jump out of the way to safety, fired at the vehicle killing Washington who was a front-seat passenger. Boyd gave a statement implicating himself and Jackson in two of the robberies. Jackson gave a statement which implicated Boyd. Both men also gave statements implicating Washington and Pee Wee in some of the crimes.
Boyd was convicted of second-degree murder in connection with Washington's death. He was also convicted of several counts of robbery, attempted robbery, burglary, battery and racketeering. In the same trial, the defendant was acquitted of two counts of grand theft and aggravated battery on a police officer.
The defendant's pretrial motions to dismiss the RICO charge and to sever the offenses were denied. In this appeal we address only the denial of the pretrial motions, agreeing with the defendant that the State failed to prove a criminal enterprise  an essential element of the RICO charge  and that the joinder of the offenses for trial constituted prejudicial error.

THE RICO STATUTE
The Florida Racketeer Influenced and Corrupt Organization (RICO) Act, chapter 895, Florida Statutes (1989), is patterned after the federal RICO statute, 18 U.S.C.A. §§ 1961-1968. Florida courts, therefore, have looked to the federal courts for guidance in interpreting and applying the Act. State v. Nishi, 521 So.2d 252 (Fla.3d DCA), rev. denied, 531 So.2d 1355 (Fla. 1988); Banderas v. Banco Central del Ecuador, 461 So.2d 265 (Fla.3d DCA 1985).
The primary intent of Congress in passing the federal RICO Act was to prevent organized crime from infiltrating businesses and other legitimate economic enterprises. Russello v. United States, 464 U.S. 16, 26, 104 S.Ct. 296, 302, 78 L.Ed.2d 17, 26 (1983). The statute, however, reaches wholly criminal organizations. United States v. Turkette, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Notwithstanding Congress's declared purpose to target organized crime, Turkette, 452 U.S. at 589, 101 S.Ct. at 2532 (quoting the statement of findings prefacing the Organized Crime Control Act of 1970, Pub.L. 91-452, 84 Stat. 923), there is no requirement under the statute that the prosecution prove that the defendants are connected with what has traditionally been known as "organized crime." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); Moss v. Morgan Stanley, Inc., 719 F.2d 5, 21 (2d Cir.1983), cert. denied, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). It is clear, however, that in enacting the RICO statute, Congress did not intend to use RICO to prosecute criminals who merely get together to commit sporadic acts of crime. See Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479, 105 S.Ct. 3292, 87 L.Ed.2d 346 (1985); United States v. Flynn, 852 F.2d 1045 (8th Cir.) (RICO does not apply to sporadic, temporary criminal alliance), cert. denied, *721 488 U.S. 974, 109 S.Ct. 511, 102 L.Ed.2d 546 (1988).
As RICO was not intended to subject ordinary sporadic criminal activity to heightened punishment, United States v. Lemm, 680 F.2d 1193, 1198 (8th Cir.1982), cert. denied, 459 U.S. 1110, 103 S.Ct. 739, 74 L.Ed.2d 960 (1983), the commission of the predicate act of racketeering provides only one of the three elements comprising a RICO violation. Unless it is shown that the individual not only (1) committed the designated crime, but also (2) associated with an enterprise and participated in the conduct of the enterprise's affairs through a (3) pattern of racketeering activity, a RICO conviction cannot stand. 18 U.S.C. § 1962(c); Sedima, 473 U.S. 479, 105 S.Ct. 3292. Although the most recent focus of RICO jurisprudence has been on the pattern element, e.g., H.J. Inc. v. Northwestern Bell Tel., 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), appellants have confined their argument on appeal to the enterprise element. Because we agree with the appellant's contention that there was no proof of an enterprise, we need not decide whether there was proof beyond a reasonable doubt of a pattern of racketeering activity.

THE ENTERPRISE ELEMENT
An enterprise is broadly defined in section 895.02(3), Florida Statutes (1989), to include any individual or group, legal or nonlegal.[1] Consistent with legislative intent, the case law is uniform that to prove that an enterprise exists, more is required than a mere showing of an association of criminals. To prove the existence of an enterprise, the government must present evidence of an ongoing organization, formal or informal, with various associates who function as a continuing unit. The enterprise "is not the `pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." Turkette, 452 U.S. at 583, 101 S.Ct. at 2528-9. Although there is a lack of specificity in the statute and case law as to the nature of proof required to establish an enterprise, and federal circuits are not in agreement on the scope of the enterprise element,[2] most authorities agree that a showing of an ongoing, structured, criminal association is required. See United States v. Griffin, 660 F.2d 996, 1000 (4th Cir.1981) (enterprise requires proof of continuity, unity, shared purpose, and identifiable structure). Manax v. McNamara, 842 F.2d 808, 811 (5th Cir.1988) (enterprise requires proof of ongoing organization with members functioning as a continuing unit as shown by a decision-making structure); United States v. Bledsoe, 674 F.2d 647 (8th Cir.1982) (enterprise requires common purpose, an ascertainable structure distinct from that inherent in conduct of pattern of racketeering activity, and it is fundamental that enterprise function as a continuing unit).

PROOF OF ALLEGED ENTERPRISE
One of the best working definitions of an enterprise is found in United States v. Riccobene, 709 F.2d 214 (3d Cir.1983), which explains the three elements of enterprise set forth in Turkette. According to Riccobene, the first element, ongoing organization, refers to the superstructure or framework of the association. The prosecution must show that the group has an identifiable decision-making structure and a mechanism for controlling and directing the group on an ongoing, rather than an ad hoc, basis. Riccobene, 709 F.2d at 222.
*722 In this case, no evidence was offered to establish, even inferentially, the presence of an identifiable decision-making and control mechanism within the association of three identified and one unidentified persons. There was no evidence that any planning, other than that which might have occured at the scene of the street crimes, preceded the offenses of December 23rd, January 1st, and January 5th. To the contrary, the evidence at trial showed that the crimes committed by Boyd and the others were haphazard, with no pre-plan or decided-upon leadership. It was shown at trial only that the four teenagers drove through Dade County committing crimes when the opportunity arose. The Cadillac, for example, was stolen when its owner left it unattended and running as she reached into a mailbox. While there is inherent difficulty in any effort to distinguish an organized criminal association from a "disorganized" one, the requirement of structure is an essential element of a RICO enterprise. See generally Lynch, RICO: The Crime of Being a Criminal, 87 Colum.L.Rev. 920, 975 (1987). As stated in Bledsoe:
Any two criminal acts will necessarily be surrounded by some degree of organization and no two individuals will ever jointly perpetrate a crime without some degree of association apart from the commission of the crime itself. Thus unless the inclusion of the enterprise element requires proof of some structure separate from the racketeering activity and distinct from the organization which is a necessary incident to the racketeering, the act simply punishes the commission of two of the specified crimes within a 10-year period. Congress clearly did not intend such an application of the Act.
Bledsoe, 674 F.2d at 664.
Under the facts in this case, we find that the minimal association of these teenagers lacked sufficient structure to constitute an enterprise. Compare United States v. Louie, 625 F. Supp. 1327 (S.D.N.Y. 1985) (RICO indictment upheld where street gang known as the Ghost Shadows had a sufficiently structured, ongoing organization to constitute a single enterprise).
Turkette's second requirement to establish an enterprise is that the various associates function as a continuous unit. This element requires the prosecution to show some degree of temporal continuity. Although the continuity requirement is generally the focus of the pattern element of the crime of RICO, continuity is also a requirement of an enterprise. See generally Smith & Reid, supra § 3.06, at 3-54.8. Given the short duration and sporadic nature of this crime spree, and the lack of evidence demonstrating that the looselyknit association posed a continuing threat, we hold that the second element of enterprise set forth in Turkette was not met. See H.J. Inc., 492 U.S. at 242, 109 S.Ct. at 2902 ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct").
The final element required to establish an enterprise is that the organization have an existence separate and apart from the pattern of racketeering activity in which it engages. Turkette, 452 U.S. at 583, 101 S.Ct. at 2528. If there is nothing linking the members of the association to one another except the commission of the predicate criminal acts, then there is no enterprise. Manax, 842 F.2d at 811. No evidence was adduced at trial to connect the perpetrators except the commission of the predicate acts. It was established, for example, that the members of the alleged association knew each other only by first or street names. More is required to prove an enterprise than that the same group of people repeatedly commit predicate offenses. United States v. Perholtz, 842 F.2d 343, 363 (D.C. Cir.1988); Lemm, 680 F.2d at 1198. There must be proof, minimally, of a purposive systematic arrangement between members of the group.
We conclude, on this point, that based on the facts which show only that four teenagers knowing little about each other, over a period of two weeks, drove through Dade County, alternatively looking for ways to obtain fast money by force or threat of force, and committing random *723 acts of violence toward that end, there was insufficient evidence to subject any one of them to the heightened punishment of RICO. See United States v. Huber, 603 F.2d 387, 395 (2d Cir.1979) (prosecution must avoid the danger of attempting to apply RICO to situations for which it was not primarily intended), cert. denied, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).[3]
We turn next to the issue of the propriety of consolidating the offenses in the absence of proof of racketeering.
Florida Rule of Criminal Procedure 3.152(a) provides the defendant with the absolute right to severance of offenses, upon timely motion, where two or more offenses are improperly charged in a single indictment or information. Thames v. States, 454 So.2d 1061 (Fla. 1st DCA 1984). It is settled law that separate offenses may not be joined where the basis for the joinder is the similarity of the circumstances of the charged offenses. McMullen v. State, 405 So.2d 479 (Fla.3d DCA 1981); Macklin v. State, 395 So.2d 1219 (Fla.3d DCA 1981). In this case, although there was a series of robberies involving a gun, stolen cars, and elderly victims, the robberies occurred at different times, places, and involved different victims. They were not connected in an episodic sense. Moreover, we held in Jones v. State, 497 So.2d 1268 (Fla.3d DCA 1986), relying on State v. Williams, 453 So.2d 824 (Fla. 1984), rev. denied, 506 So.2d 1043, cert. denied, 484 U.S. 823, 108 S.Ct. 87, 98 L.Ed.2d 48 (1987), that consolidation of offenses for trial is improper based on the similarity of offenses perpetrated, allegedly, by the same defendant, where the episodes are otherwise independent offenses and separated in time.
The purpose of requiring separate trials where related offenses are not based on the same act or transaction, or on two or more connected acts or transactions, see Fla.R.Crim.P. 3.151, is to assure that evidence adduced on one charge will not be misused to dispel doubts on the other charges. Williams, 453 So.2d at 825 (consolidation of nine separate informations alleging burglaries and thefts of different victims over an eight-day period is prejudicial error).
We reject the State's fallback argument that the joinder of the offenses may be upheld on the basis of count I of the information which alleges RICO violations since there was no pretrial challenge to the sufficiency of the pleadings. The defendant's pretrial motion to dismiss the RICO count on grounds that there was no evidence of a criminal enterprise, and that the joinder of the offenses would prejudice the cause by bringing unrelated incidents before the jury, adequately preserved the error for review. That motion should have been granted.
Reversed and remanded for separate trials on the connected acts or transactions.
HUBBART, J., concurs.
COPE, Judge (specially concurring).
I concur in the judgment. I would not follow United States v. Riccobene, 709 F.2d 214 (3d Cir.), cert. denied, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983), as persuasive authority in construing the Florida RICO (Racketeer Influenced and Corrupt *724 Organization) Act, chapter 895, Florida Statutes (1989).
RICO is aimed at organized criminal activity, that is, criminal activity that is systematic and continuous. "[T]he target of RICO Act prosecutions will be, appropriately, the professional or career criminal and not non-racketeers who have committed relatively minor crimes." Bowden v. State, 402 So.2d 1173, 1174 (Fla. 1981); see also Banderas v. Banco Central del Ecuador, 461 So.2d 265, 268-69 (Fla.3d DCA 1985).
Under the RICO statute, an "enterprise" can consist of a "group of individuals associated in fact although not a legal entity... ." § 895.02(3), Fla. Stat. (1989).[1] In construing the counterpart provision of the federal RICO statute, 18 U.S.C. § 1961 (4), the United States Supreme Court has said that a "group of individuals associated in fact although not a legal entity," id., is "a group of persons associated together for a common purpose of engaging in a course of conduct[,]" which "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528-29, 69 L.Ed.2d 246, 254 (1981). The enterprise "is an entity separate and apart from the pattern of activity in which it engages." Id., 101 S.Ct. at 2529, 69 L.Ed.2d at 255. After Turkette was decided, the federal courts of appeals divided in their interpretations of Turkette and the "enterprise" element of the federal statute. See, e.g., Comment, The RICO Enterprise as Distinct from the Pattern of Racketeering Activity: Clarifying the Minority View, 62 Tulane L.Rev. 1419 (1988); Comment, The Enterprise Requirement: Getting To The Heart of Civil RICO, 1988 Wisconsin L.Rev. 663.[2],[3]
In deciding how to interpret the Florida statute, we must begin with the recognition that when there is a wholly criminal organization, it will ordinarily operate as a "group of individuals associated in fact although not a legal entity...." § 895.02(3), Fla. Stat. (1989). It is unrealistic to expect that such an association-in-fact will have a highly formalized structure or an organizational chart with the same degree of particularity as would be true of a legitimate business entity. Such an association-in-fact may or may not have formal mechanisms for direction and control. The smaller the association, the less likely that there will be the trappings of formal organization.
For those reasons, I think that the Third Circuit's test in United States v. Riccobene, 709 F.2d at 221-24, places undue emphasis on the proof of organizational structure.[4] If the proof is sufficient to show the existence of the association-in-fact (including the continuity and common purpose elements outlined in Turkette), then proof of the details of the group's organizational and decision-making structure is surplusage. The State is correct in *725 suggesting that if Riccobene is rigorously applied, then in the case of many criminal organizations the State will be unable to employ RICO unless it has an informant within the criminal organization who can reveal details of organizational structure and the decision-making apparatus.[5] The Riccobene approach should therefore be avoided. We should instead follow United States v. Cagnina, 697 F.2d 915 (11th Cir.), cert. denied, 464 U.S. 856, 104 S.Ct. 175, 78 L.Ed.2d 157 (1983), in rejecting the necessity to prove "ascertainable structure" as a required element in the proof of association-in-fact, id. at 921, thereby aligning ourselves with the majority view of the federal courts of appeals. See e.g., United States v. Hewes, 729 F.2d 1302 (11th Cir.1984), cert. denied, 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985); United States v. Cauble, 706 F.2d 1322 (5th Cir.1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984). See generally Comment, 62 Tulane L.Rev. 1419; Comment, 1988 Wisconsin L.Rev. 663; supra note 2. I concur in the judgment in the present case because, even under the majority view, the proof was insufficient.
The State has asked that the question passed on in this case be certified to the Florida Supreme Court as a question of great public importance. That the question is both important and difficult is signified by the fact that the federal courts of appeals are sharply divided on the interpretation of the "enterprise" element of the counterpart federal statute. I would therefore grant the State's request for certification.
NOTES
[1] The Florida statute provides:

"Enterprise" means any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental, as well as other, entities.
§ 895.02(3), Fla. Stat. (1989). The federal Act defines enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961 (4).
[2] D. Smith & T. Reid, Civil RICO §§ 3.02-3.07 (1990) presents a detailed discussion on the split positions of the federal circuit courts.
[3] Recognizing the dangers inherent in the broad scope of the RICO statute, the Department of Justice has imposed internal limitations on seeking RICO indictments. The Department's self-restraint is reflected in its RICO Guidelines found in Title 9 of the United States Attorney's Manual at 9-110.300 et seq. Under the Guidelines, a prosecutor should seek authorization to prosecute only if the RICO charges:

A. Are necessary to ensure that the indictment:
1. Adequately reflects the nature and extent of the criminal conduct involved; and
2. Provides the basis for an appropriate sentence under all the circumstances of the case; or
B. Are necessary for a successful prosecution of the government's case against the defendant or a co-defendant; or
C. Provide a reasonable expectation of a forfeiture which is proportionate to the underlying criminal conduct.
Smith & Reed, supra § 3.01 at 3-3, 3-4.
[1] The statute does not invariably require that criminal conduct be conducted through an "enterprise," see § 895.03(1), (2), Fla. Stat. (1989), although that was the charge in the present case. "Enterprise" is also defined to include any legitimate business entity, such as a corporation or partnership, id. § 895.02(3), and under the statute, an individual or sole proprietorship can also be an enterprise. Id.
[2] Compare United States v. Perholtz, 842 F.2d 343 (D.C. Cir.1988); United States v. Williams, 809 F.2d 1072 (5th Cir.), modified on unrelated issue, 828 F.2d 1 (5th Cir.), cert. denied, 484 U.S. 896, 108 S.Ct. 228, 98 L.Ed.2d 187 (1987); United States v. Weinstein, 762 F.2d 1522 (11th Cir.), modified on unrelated issue, 778 F.2d 673 (11th Cir.1985), cert. denied, 475 U.S. 1110, 106 S.Ct. 1519, 89 L.Ed.2d 917 (1986); United States v. Mazzei, 700 F.2d 85 (2d Cir.), cert. denied, 461 U.S. 945, 103 S.Ct. 2124, 77 L.Ed.2d 1304 (1983) with United States v. Tillett, 763 F.2d 628 (4th Cir.1985); United States v. Riccobene, 709 F.2d 214 (3d Cir.), cert. denied, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983); Bennett v. Berg, 685 F.2d 1053 (8th Cir.1982), cert. denied, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983).
[3] In interpreting the Florida RICO Act, the federal decisions are persuasive authority but are not binding on the state courts.
[4] To be sure, the Third Circuit test is intended to be flexibly applied. Riccobene does not require proof of every detail of organizational superstructure, but only that "some sort of structure exists within the group for the making of decisions, whether it be hierarchical or consensual. There must be some mechanism for controlling and directing the affairs of the group on an on-going, rather than an ad hoc, basis." Id. at 222 (emphasis added).
[5] Of course, proof of structure may be helpful in showing the existence of an association-in-fact, but it is not an essential element.