652 So.2d 877 (1995)
Richard Freeman BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 93-2284.
District Court of Appeal of Florida, Fifth District.
March 10, 1995.
Rehearing Denied April 11, 1995.
*878 James B. Gibson, Public Defender, and Nancy Ryan, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Anthony J. Golden, Asst. Atty. Gen., Daytona Beach, for appellee.
GOSHORN, Judge.
Richard Brown was found guilty by a jury of twenty-six counts of uttering a forged document, nineteen counts of petit theft, nine counts of grand theft, and one count of racketeering. We affirm in part, reverse in part and remand.

THE FACTS
One hundred twenty-one blank payroll checks in a checkbook were stolen from R.E. Clifton Fernery on February 9, 1993. These checks were passed by five different people at area grocery stores. The defense stipulated that each of the twenty-six checks supporting the uttering counts was tendered by either William Shannon, Carol Calkins, Heather Tharp, Margaret Loveless or Thomas Gardner. The testimony of all five of these witnesses was consistent. They did not know one another, with the exception of Tharp and Calkins, and had not previously met Brown until Brown approached each witness and offered each witness $50 for every check cashed.
Brown told each witness how to dress and behave when cashing checks; Brown chose the time and place the checks would be cashed; and Brown provided the transportation to the location where the checks would be cashed. Loveless stated different people drove her and Brown to the stores and that she knew the drivers were being paid. On February 27, 1993, police stopped Brown's car and found five of R.E. Clifton Fernery's checks in the car. Another check was found in Brown's motel room. Brown's finger-prints were on four of the five checks found in the car and on two of the checks passed by Shannon. Brown was charged with the theft of the checks (two petit theft counts) and with acting as a principal in presenting the forged checks for payment at the various stores (twenty-eight uttering counts). The twenty-eight petit and grand theft counts were based on Brown's actions in receiving payment for the checks. The racketeering count alleged Brown acted in an enterprise with Shannon, Calkins, Tharp, Loveless, and Gardner and had committed a pattern of forty-one racketeering acts.[1] Brown raises numerous issues on appeal which we discuss seriatim.

ENTERPRISE
Count fifty-nine of the information charged Brown with violating section *879 895.03(3), Florida Statutes (1991), racketeering. This section provides:
It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.
On appeal, Brown contends the State failed to establish that he was involved in an "enterprise" as defined in section 895.02(3), Florida Statutes (Supp. 1992):
"Enterprise" means any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental, as well as other, entities.
Brown argues that the State failed to prove this essential element of the crime of racketeering, and his motion for judgment of acquittal should have been granted.
In Boyd v. State, 578 So.2d 718 (Fla. 3d DCA), review denied, 581 So.2d 1310 (Fla. 1991) the court discussed the element of enterprise:
Consistent with legislative intent, the case law is uniform that to prove that an enterprise exists, more is required than a mere showing of an association of criminals. To prove the existence of an enterprise, the government must present evidence of an ongoing organization, formal or informal, with various associates who function as a continuing unit. The enterprise "is not the `pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." [United States v.] Turkette, 452 U.S. at 583, 101 S.Ct. at 2528-9. Although there is a lack of specificity in the statute and case law as to the nature of proof required to establish an enterprise, and federal circuits are not in agreement on the scope of the enterprise element, most authorities agree that a showing of an ongoing, structured, criminal association is required. See United States v. Griffin, 660 F.2d 996, 1000 (4th Cir.1981) (enterprise requires proof of continuity, unity, shared purpose, and identifiable structure). Manax v. McNamara, 842 F.2d 808, 811 (5th Cir.1988) (enterprise requires proof of ongoing organization with members functioning as a continuing unit as shown by a decision-making structure); United States v. Bledsoe, 674 F.2d 647 (8th Cir.1982) (enterprise requires common purpose, an ascertainable structure distinct from that inherent in conduct of pattern of racketeering activity, and it is fundamental that enterprise function as a continuing unit).
Id. at 721 (footnote omitted).
In our view, the first element of an enterprise, "ongoing organization," was not satisfied. Although Brown was described by witnesses as the "boss," and Brown's methods were highly organized, there was no evidence that Brown associated with any of the witnesses except to carry out a specific incident of check cashing. There was no evidence that Brown and each check casher or Brown and the check cashers as a group had any structure separate from the racketeering activity. Other than the amount of control and planning incident to accomplishing each predicate act, there was no evidence Brown and any other check casher had any of the structure needed to constitute an enterprise.
The second element, that the various associates function as a continuous unit, requires the state to show "some degree of temporal continuity." Id. at 722. Here, the crimes were all committed within a short time period. Shannon tendered the checks for payment between February 8 and February 12; Calkins tendered the checks between February 17 and February 27; Tharp tendered the checks between February 24 and February 27; Loveless tendered the checks between March 8 and March 23; and Gardner tendered the checks between March 23 and March 25. In H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 242, 109 S.Ct. 2893, 2902, 106 L.Ed.2d 195 (1989) the Court stated, "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." Here, *880 presumably the conduct could have continued on as long as stolen checks were available. Brown could control the rate at which the checks were cashed and we conclude that whether the continuity aspect was met was properly left to the jury.
The third element of an enterprise "is that the organization have an existence separate and apart from the pattern of racketeering activity in which it engages." Boyd, 578 So.2d at 722 (citing United States v. Turkette, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)). Under the facts of the case at bar, this element dovetails with that of the first element. The lack of each witness's knowledge of the others precludes the finding of an enterprise. Count fifty-nine charges that Brown acted with "a group of individuals associated in fact." The evidence at trial was wholly lacking that the check cashers were a group "associated in fact."
If there is nothing linking the members of the association to one another except the commission of the predicate criminal acts, then there is no enterprise... . More is required to prove an enterprise than that the same group of people repeatedly commit predicate offenses... . There must be proof, minimally, of a purposive systematic arrangement between members of the group.
Boyd, 578 So.2d at 722 (citations omitted). As Brown correctly argues, the State failed to bring forth evidence showing an ongoing enterprise.
Brown next argues that in addition to the State's failure to demonstrate the existence of an enterprise, the State also failed to prove "a pattern of racketeering activity." Section 895.02(4) defines that term:
"Pattern of racketeering activity" means engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurred after the effective date of this act and that the last of such incidents occurred within 5 years after a prior incident of racketeering conduct.
In addition to the similarity and interrelatedness of the activity, the requirement of continuity of particular criminal activity has been engrafted onto the statutory definition. Bowden v. State, 402 So.2d 1173, 1174 (Fla. 1981). In H.J. Inc., supra, the Court discussed the continuity aspect:
"Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition... . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated.
Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case... . A RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit.
492 U.S. at 241-43, 109 S.Ct. at 2901-02, 106 L.Ed.2d at 209-10 (citations omitted).
While it is difficult to analyze the continuity element because there was no showing of an enterprise, applying the theory that continuity can be established by the threat of future criminal activity results in the conclusion that the evidence in this case would not support such a finding. Under the facts presented by the State, Brown's scheme was limited by the number of checks stolen and did not pose a threat of long-term existence. Compare United States v. Busacca, 936 F.2d 232 (6th Cir.) (holding that predicate acts of misappropriating six checks in 2 1/2 months from health and pension funds over which the defendant had control was sufficient to establish continuity where Busacca had the *881 ability to control disbursement of monies from those funds), cert. denied, 502 U.S. 985, 112 S.Ct. 595, 116 L.Ed.2d 619 (1991); State v. Lucas, 600 So.2d 1093 (Fla. 1992) (holding that evidence of a series of related fraudulent activities which occurred over a six-month period can demonstrate "closed-ended continuity").
The State's answer is that the motion for judgment of acquittal was not sufficiently specific to apprise the trial court of the exact basis for the motion, and thus the issue was not preserved. See, e.g., Tillman v. State, 471 So.2d 32 (Fla. 1985) (holding that a specific legal argument or ground must be presented to the lower court to preserve the issue for review by a higher court). Brown replies that the error asserted is fundamental and may be addressed even absent its specific consideration below, citing Williams v. State, 516 So.2d 975, 978 (Fla. 5th DCA 1987), review denied, 525 So.2d 881 (Fla. 1988). In Williams, this court held, en banc, that where the facts were insufficient to support a robbery conviction, this court would address the issue on direct appeal even though it was not raised below, stating that "being convicted of a crime that never occurred is error of such fundamental nature as is correctable on appeal without an objection below." Id. at 978. See also Johnson v. State, 569 So.2d 872 (Fla. 2d DCA 1990) (holding that without prima facie evidence of the crime of which Johnson was convicted, the conviction was fundamentally erroneous and must be reversed regardless of a lack of contemporaneous objection below), review denied, 581 So.2d 167 (Fla. 1991); Nelson v. State, 543 So.2d 1308 (Fla. 2d DCA 1989) (holding that it was fundamental error to convict Nelson of a crime the essential elements of which were not prima facie established by the evidence). Sub judice, because there was no evidence of an enterprise, an essential element of the offense of racketeering, the State failed to make a prima facie case and fundamental fairness has required this court to address the appeal even absent specific objection below. See also Burrell v. State, 601 So.2d 628 (Fla. 2d DCA 1992) (noting that the case was not one in which the State's failure to prove the offense was a technical matter that could have been resolved below if raised, but rather it was clear that the State could not prove an essential element because the facts did not support it).[2]

THEFT
Brown contends that because Shannon testified he was not able to cash the check supporting counts twenty-one and twenty-two (uttering and theft) and the same is true regarding the check supporting counts thirty-five and thirty-six (uttering and theft), the State failed to prove the theft offenses charged in counts twenty-two and thirty-six and thus a judgment of acquittal should have been granted as to both.
Brown's argument in this regard is without merit. Counts twenty-two and thirty-six of the amended information charged that Brown "did knowingly obtain or use, or did endeavor to obtain or to use... ." The fact that the attempts to cash the checks were unsuccessful is immaterial to the crime charged. See State v. Sykes, 434 So.2d 325 (Fla. 1983) (holding that because the theft statute includes the words "or endeavors to obtain or use," the legislature intended to define theft as including the attempt to commit the theft and thus the substantive, completed crime is proven when an attempt, along with the requisite intent is established). Accordingly, Brown's convictions on both counts twenty-two and thirty-six are affirmed.

*882 PETIT THEFT

Count forty-one charged Brown with the petit theft of checks numbered 2947, 2966, 2967, 2969, and 2970. Sergeant Nealon testified that those five checks were found in Brown's car on February 27, 1993. Count fifty charged Brown with the petit theft of check no. 2942, the check found in Brown's motel room. Brown argues that each separate check in the checkbook that was stolen from the fernery cannot support separate petit theft charges and thus he can only properly be charged with one count of petit theft, either count forty-one or fifty, but not both.
The State agrees that the evidence showed that all the checks were stolen on February 9, 1993, but contends that the proof indicates Brown obtained or used the checks over different dates and thus two crimes were properly charged. We disagree. There was but one single taking from the fernery. As to the checks referred to in counts forty-one and fifty, there is no evidence that Brown obtained them or attempted to use them over different dates. Upon remand, the lower court must strike one petit theft conviction. See Johnson v. State, 490 So.2d 182 (Fla. 1st DCA 1986) (holding that defendant's theft of six money orders from a convenience store in one taking would support only one theft conviction).

RESTITUTION
The State concedes that scrivener's errors exist in special conditions 15, 16, and 24 of the probation order requiring Brown to provide restitution for amounts obtained for the checks numbered 2881, 2887, and 2971. The State neither sought nor obtained judgments against Brown for those three checks. Accordingly, those three special conditions are stricken from the probation order.

COSTS
Brown contends that the $1,050 cost that Brown was ordered to pay to the Office of the Statewide Prosecutor for the services of the two assistant statewide prosecutors who tried the case must be stricken as unauthorized by section 939.01. See Martin v. State, 632 So.2d 1143 (Fla. 5th DCA 1994); Smith v. State, 606 So.2d 427 (Fla. 1st DCA 1992) (holding that the state is not entitled to recover attorney's fees from a defendant for the cost of prosecution under section 939.01), review denied, 618 So.2d 211 (Fla. 1993). The State acknowledges this court's holding that the statute does not authorize an award of attorney's fees for prosecutors, but points out that Brown did not object to the State's motion for payment of costs of prosecution.
We disagree with the State that failure to pose a contemporaneous objection waives appellate review. This court has consistently cited Smith, supra, as supporting reversal in sentencing proceedings without objection in the trial court. In Smith, the First District, citing State v. Rhoden, 448 So.2d 1013 (Fla. 1984), rejected the State's argument that the defendant failed to preserve the issue of assessment of costs and stated that the "contemporaneous objection rule is probably inapplicable in the circumstances of this case." Smith, 606 So.2d at 528. Accordingly, the $1,050 attorney's fees provision is stricken.
Brown also contends that special condition 13 of the probation order, requiring Brown to pay the $240 to First Step of Volusia County, Inc., was improperly imposed. This court recently considered this issue en banc and held that the imposition of costs to First Step is improper. See Tibero v. State, 646 So.2d 213 (Fla. 5th DCA 1994). Further, the court's oral pronouncement was for court costs in the amount of $225, while special condition 29 orders Brown to pay court costs in the amount of $255. Upon remand, the award of court costs in the amount of $255 as provided in the written probation order must be amended to reflect the $225 award that the trial court imposed in court.

CONCLUSION
In summary, the judgment and sentence imposed for the count of racketeering is reversed because the State failed to establish the essential elements thereof. Because Brown stole one checkbook, Brown was subject to prosecution for one count of petit theft, not two. Accordingly, upon remand either count forty-one or fifty should be *883 stricken and Brown's sentence adjusted accordingly. Special conditions 15, 16, and 24 ordering Brown to pay restitution for checks for which the State did not obtain judgments, the $1,050 attorney's fee award, and the imposition of costs in the amount of $240 to First Step are stricken. The amount of court costs awarded must be reduced to reflect the $225 orally imposed.
AFFIRMED in part; REVERSED in part; REMANDED.
DAUKSCH and GRIFFIN, JJ., concur.
NOTES
[1] The forty-one predicate acts consisted of the twenty-eight check cashing incidents charged, and thirteen alleged predicate acts in other counties. Pretrial, the State nol prossed two uttering counts, one grand theft count and one petit theft count.
[2] In deciding the RICO issue, we are aware that the Second District recently addressed a somewhat similar factual issue and reversed a judgment of acquittal entered after a jury had convicted the defendant of racketeering. Clark v. State, 645 So.2d 575 (Fla. 2d DCA 1994). However, we conclude that pivotal factual distinctions between Clark and the instant case foreclose any finding of conflict. Particularly significant in Clark was the ongoing nature of the enterprise, its sophistication and the interrelation of its participants evidencing a "purposive systematic arrangement between members of the group." Boyd, 578 So.2d at 722. In the instant case, we conclude that reasonable people could not differ. The evidence did not show the existence of an organization separate and apart from the pattern of racketeering activity. See Clark, supra.