728 So.2d 1206 (1999)
Ralph GROSS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 96-3312.
District Court of Appeal of Florida, Fourth District.
March 17, 1999.
*1207 Samuel R. Halpern, Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and James J. Carney, Assistant Attorney General, West Palm Beach, for appellee.
OWEN, WILLIAM C., Jr., Senior Judge.
Following trial by jury, appellant was convicted on seventeen felony counts, including a count of racketeering and counts for each of the predicate offenses. In this direct appeal appellant's primary issues relate to collateral estoppel, double jeopardy, and the sufficiency of the state's evidence of enterprise. We conclude that no harmful error has been shown and we therefore affirm in all respects.
Appellant, who lived in Broward County, had been friends with Christopher Forester since the early 1980's. In 1991 Forester was living in Ft. Pierce and became friends with his neighbor, John Brady, a police officer. By 1993 Forester and Brady developed a scheme to rob suspected drug dealers. The modus operandi called for them to go to the victim's home dressed and acting as police officers in order to gain entry. Brady enlisted his partner, Evans, and Forester recruited appellant, whose role was principally to select and identify Broward County victims and point out their homes. Because most of the victims were appellant's acquaintances, he did not go into the homes or directly participate in the robberies. His routine was to drive to the victim's home, give his accomplices a signal, and depart for the designated rendezvous to await his share of the loot.
Over a period of approximately a year these four, together with several others who were brought in on certain of the crimes, committed a series of planned home invasion robberies. Relevant to the issues on this appeal are the incidents on the night of September 10, 1993. On that date, Forester, Brady, and Evans drove to Broward County and met with appellant. Several victims, including Mr. Mattos and Mr. Duffy, were identified, and the evening's frolic commenced. Appellant led the others to Mr. Duffy's home, then departed. Mr. Duffy was not home but Forester, Brady and Evans found an open sliding glass door, entered and stole drugs and money. They again met with appellant and he led them to Mr. Mattos' home. Mr. Mattos was home. Brady and Evans identified themselves as police officers, entered the Mattos home, and robbed Mr. Mattos and his mother. Both Brady and Evans were armed with handguns.
Appellant, Forester, Brady, and Evans, along with three others, were named as co-defendants. Count 8 charged armed burglary with a firearm (Duffy); Count 9 charged armed burglary with a firearm (Mattos); and Count 10 charged armed robbery with a firearm (Mattos). Evan's trial was severed, and he was tried first. The jury found Evans guilty of unarmed burglary (Counts 8 and 9), and unarmed robbery (Count 10). Appellant was then tried. The jury found appellant guilty of armed burglary with a firearm (Counts 8 and 9), and guilty of armed robbery with a firearm (Count 10). His post-verdict motion for arrest of judgment on these three counts, based on the doctrine of collateral estoppel, was denied.
Appellant's first point on appeal is that under the doctrine of collateral estoppel the state was barred from again litigating the factual issue of whether a firearm was used during the offenses charged in counts 8-10 because a prior jury, by finding Evans guilty of unarmed burglary and unarmed robbery, had in effect found that no firearm was used in those offenses. Appellant and Evans, though co-defendants, were not in privity; each was a principal. Collateral estoppel does not apply in this context. See Potts v. State, 430 So.2d 900 (Fla.1982).
*1208 Appellant's second point on appeal is that his convictions on Counts 10, 14, 20, 23, 31, 32, and 33 violate his constitutional protection against double jeopardy because, he argues, since each of those offenses were used as the predicate offenses of the RICO count (Count 1) on which he was convicted, they are necessarily lesser included offenses of Count 1. This issue has been decided adversely to appellant's contention, both here and in other courts, and we see no reason to revisit it. See Bergelson v. State, 581 So.2d 918 (Fla. 4th DCA 1991); Haggerty v. State, 531 So.2d 364 (Fla. 1st DCA 1988); Carroll v. State, 459 So.2d 368 (Fla. 5th DCA 1984).
Appellants third point on appeal is that the court erred in denying his motion for directed verdict on the RICO count because there was insufficient evidence to establish the existence of an enterprise. Section 895.02(3), Florida Statutes (1993), defines enterprise as:
"Enterprise" means any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental, as well as other, entities.
Appellant's argument that the evidence here was insufficient is based primarily on Boyd v. State, 578 So.2d 718 (Fla. 3d DCA 1991). In Boyd, the court stated:
One of the best working definitions of an enterprise is found in United States v. Riccobene, 709 F.2d 214 (3d Cir.1983), which explains the three elements of enterprise set forth in [U.S. v. ]Turkette[, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)]. According to Riccobene, the first element, ongoing organization, refers to the superstructure or framework of the association. The prosecution must show that the group has an identifiable decision-making structure and a mechanism for controlling and directing the group in an ongoing, rather than an ad hoc basis.
Id. at 721 (emphasis added) (adopting third circuit's interpretation of the federal statute which is very similar to Florida's RICO statute).
Based on the Boyd case, appellant argues that here there was insufficient evidence that the defendants were "organized" because there was no evidence of "a decision-making structure" which operated to "control and direct" the group.
In Boyd, the court concluded there was insufficient evidence that the group was organized, stating:
There was no evidence that any planning, other than that which might have occured [sic] at the scene of the street crimes, preceded the offenses of December 23rd, January 1st, and January 5th. To the contrary, the evidence at trial showed that the crimes committed by Boyd and the others were haphazard, with no pre-plan or decided-upon leadership. It was shown at trial only that the four teenagers drove through Dade County committing crimes when the opportunity arose.
Id. at 722.
We have not analyzed whether the state presented sufficient evidence to establish a decision making structure and a mechanism for controlling and directing the group because we conclude that such is not required to establish an enterprise. The eleventh circuit has not required the government to show a decision making structure which operated to control and direct the group in order to establish an enterprise under the similarly worded federal statute. In United States v. Cagnina, 697 F.2d 915 (11th Cir. 1983), the court rejected an argument that an enterprise required an "ascertainable structure" distinct from that inherent in the conduct of a pattern of racketeering activity. The court held:
The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct.
* * *
This Circuit has interpreted "enterprise" to include an informal criminal network engaged in racketeering activity, such as the association of Cagnina and his colleagues. In United States v. Elliott, 571 *1209 F.2d 880 (5th Cir.), cert. denied, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1973), the Court held that a group of persons who had committed a variety of unrelated offenses with no agreement as to any particular crime could be convicted of a RICO offense, because they were associated for the purpose of making money from repeated criminal activity. The Court stated that RICO reaches any group of individuals "whose association, however loose or informal, furnishes a vehicle for the commission of two or more predicate crimes."
Id. at 920-21 (interpreting the federal statute).
Here, it seems clear that appellant's association with his co-defendants furnished a vehicle for the carrying out of the home invasions in Broward County. Appellant scouted out potential victims in Broward County and his co-defendant's, two of whom were police officers and not known to the victims, would come down from St. Lucie County to commit the home invasions. Indeed, appellant does not argue that the facts of this case do not establish an enterprise under the standard applied by the eleventh circuit.
Neither Brown v. State, 652 So.2d 877 (Fla. 5th DCA 1995), nor State v. Jackson, 677 So.2d 938 (Fla. 2d DCA 1996), holds that an enterprise requires a decision making structure and a mechanism for controlling and directing the group. Although Brown cites Boyd for the proposition, "most authorities agree that a showing of an ongoing, structured, criminal association is required," Brown did not include the language regarding a decision making structure. In Jackson, the court held "[i]n order to satisfy the `enterprise' element of a RICO charge, the state must allege the defendant acted in concert with another person, organization, or entity." Id. at 941. The court in Jackson went on to state that the information, which alleged the defendant "associated with a number of separate and identifiable entities through which he conducted his criminal activity," made a prima facie showing of the enterprise element. Clearly, there was evidence here that appellant associated with a number people through which he conducted his criminal activity. We hold that the trial court did not err by denying appellant's motion for a directed verdict which argued a lack of evidence establishing the decision making structure, and certify conflict with Boyd on this point. It follows that the court did not err in denying appellant's requested jury instruction on this identical issue, appellant's fourth point.
As a further point on appeal, appellant argues that he was denied a fair trial because, although he had been declared indigent for costs, the court would not authorize a transcript of the testimony of the chief prosecution witness given at appellant's first trial (which had ended in a mistrial). Though it appears questionable that this issue was preserved, nonetheless, if the court erred at all, it was harmless. Argument was made that the transcript of Forester's prior trial testimony was necessary to impeach him through the prior inconsistent statements made at the first trial, but the only inconsistent statement brought to our attention is insignificant. Furthermore, during the extensive cross-examination of Forester, appellant's counsel was able to impeach Forester's credibility in more significant ways.
The remaining points have been considered but do not require discussion.
AFFIRMED.
STONE, C.J., and KLEIN, J., concur.