W. SHARP, J.
Bejerano appeals from a final judgment finding him guilty of racketeering,[1] organized fraud (less than $20,000),[2] and two counts of insurance fraud.[3] His primary points on appeal are that the trial court erred in failing to grant a motion for judg *219 ment of acquittal in his favor on the RICO charge, because the state failed to prove sufficient evidence , of an “enterprise,” and because the trial court erred in refusing to modify the standard jury instruction to encompass the necessity for the jury to find, in order to determine an “enterprise,” that the group must have an identifiable decision making structure and a mechanism for controlling and directing the group on an ongoing, rather than an ad hoc basis. We affirm.
In this case, the indictment set forth that Bejerano and other named persons,[4] while employed by or associated with an enterprise consisting of the group of persons named in footnote four, associated in fact with named corporations[5] to conduct and participate in the enterprise through a continuous pattern of racketeering activity by engaging in at least two incidents of racketeering conduct. The predicate acts set forth were to cause false claims for payments or benefits to be presented to the Walt Disney Corporation’s self-insured group insurance fund, as well as Prudential Insurance which covered Walt Disney employees, Albertson’s self-insurance group policy, and Cigna Insurance Company, which covered United Airlines employees.
Looked at in the light most favorable to the state,[6] the evidence at trial showed that Valdes and his partners, Erick Bernal and Louis and Miriam Portas, opened medical clinics in the Orlando area. They had previously met in connection with clinics owned by Jaramillo in Miami, which also was engaged in making false billings for insurance claims. The purpose was to fraudulently bill insurance companies. Louis Portas set up the procedure of recruiting patients by going to Walt Disney World or Albertsons and offering $150.00 or $200.00, primarily to Hispanic employees, to come to the clinics to see a doctor. Portas also enlisted the aid of recruiters to bring in patients, who also were paid for their efforts. Portas coached the patients to make false claims of pain and symptoms to justify unneeded and excessive tests. Rosa recruited medical doctors to order the tests, but the doctors were not involved in the fraud.
Valdes recruited Bejerano to do testing and lab work for the clinics. He was paid for his testing and reading the results of the tests. Bejerano understood patients were to be given a complete battery of tests. He and other associates were also to perform additional tests not indicated by the doctors. Bejerano was aware of how the clinics were getting patients and the general scam. He also fabricated tests and falsified reports for tests not actually done, which he submittéd to the clinics, knowing they would be used for false billing and claims. He had technicians working for him to perform the tests. At one point, Bejerano said he wanted the runners to bring in patients for his own clinics. Valdes refused. Not all of the billings and tests done by Bejerano were fraudulent, nor were all of the billings submitted to the insurers. However, a substantial percentage were either fraudulent or bogus.
At the trial, Valdes and Bernal testified as to how the medical claims scam actually operated. They had pled guilty to the charges against them. On cross-examination, they admitted they were hoping for a reduced sentence in exchange for their testimony. Evidence concerning how the various clinics operated and the roles played by the various persons involved was *220 presented in more detail than many RICO cases.
The Florida RICO statute makes it a crime for a person employed by or associated with any enterprise to conduct or participate directly or indirectly in such enterprise through a pattern of racketeering activity. § 895.03(3), Florida Statutes. Proof of the existence of an “enterprise” is necessary in any RICO conviction because it is a substantive element , of the crime.[7] “Enterprise” is defined by the statutes as:
Enterprise'■ means any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact, although not a legal entity; and it includes illicit as well as licit enterprises and governmental, as well as other entities. A criminal street gang as defined in s. 874.03 constitutes an enterprise.
§ 895.02(3), Fla. Stat. (1997). The definition of enterprise is a tad diffuse, as are other words and phrases in the Florida RICO statute, but they have survived constitutional challenges.[8]
Because the Florida RICO statute is patterned after the federal RICO statute, Florida courts have looked to the federal courts for guidance in interpreting and applying it. See Boyd v. State, 578 So.2d 718 (Fla. 3d DCA), rev. denied, 581 So.2d 1310 (Fla.1991). However, with regard to the “enterprise” element, the ' federal courts have yet to resolve their own conflict over whether, and how much‘ proof there must be, that the entity or enterprise has a structure to make decisions, hierarchical or consensual, or a mechanism to control and direct affairs of the group on an ongoing rather than an ad hoc basis. Some say it is required. See United States v. Riccobene, 709 F.2d 214 (C.A.3 1983), cert. denied, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983); United States v. Bledsoe, 674 F.2d 647 (8th Cir.), cert. denied, 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982). . In United States v. Cagnina, 697 F.2d 915 (11th Cir.), cert. denied, 464 U.S. 856, 104 S.Ct. 175, 78 L.Ed.2d 157 (1988), the court criticized this view, holding that it was not necessary to prove an enterprise has a distinct formalized structure, and that it can encompass an informal criminal network, which is engaged in racketeering activity. See also United States v. DeRosa, 670 F.2d 889. (9th Cir.), cert. denied, 459 U.S. 993, 103 S.Ct. 353, 74 L.Ed.2d 391 (1982).
In Boyd, the third district adopted the Riccobene language that a showing of an ongoing, structured, criminal association is required to prove the existence of an enterprise. In his concurring opinion, Judge Cope questioned that requirement, concluding that it is unrealistic to expect that criminal associations will have a highly organized, formalized structure, and those associations may well lack formal mechanisms for direction and control. However, he concurred in the result in Boyd because the state was only able to prove that the defendant had been involved in a series of different robberies and car thefts over a relatively short-period of time, and had various accomplices on an ad hoc basis.-
More recently, the fourth district in Gross v. State, 728 So.2d 1206 (Fla. 4th DCA), rev. granted, 741 So.2d 1135 (Fla.1999), opted for the Cagnina interpretation of “enterprise.” In that case, the state proved that there was a loosely con *221 nected group of friends and acquaintances who developed and carried out a series of home invasions to rob suspected drug dealers. Residents of other counties, dressed as police officers, would perform the robberies. One defendant who lived in the area selected the victims and pointed out the residences to the others, who then carried out the robberies. All shared in the stolen profits. The operations lasted over a year. Four men were initially involved, but others were added later. The court held that it did not need to analyze whether the state presented sufficient evidence of a decision-making structure and mechanism for controlling and directing the group because it held such proof was not required to establish the existence of an enterprise under the Florida RICO statute.
This court has not specifically addressed that element of a RICO enterprise. In Brown v. State, 652 So.2d 877 (Fla. 5th DCA 1995), this court reversed a RICO conviction on the ground that the state had failed to prove the “first” element of an enterprise:[9] that there was an ongoing organization. In Brown, the defendant had stolen checks from a business, and he coached and enabled various accomplices to cash them at various places. His methods were organized, but there was no evidence that he associated with any of his accomplices except to cash the checks and they had no connection with one another.
In Brown, this court said the second element of enterprise — that the associates function as a continuous unit — requires some degree of temporal continuity. In that case, we said that was a jury, issue because the defendant could have continued on as long as stolen checks were available. With regard to the third element and the one involved in this case — that the organization have an existence separate and apart from the pattern of racketeering activity in which it engages — we concluded that proof of that element failed also because it “dove tailed with the first.” There was nothing linking the members of the check-cashing scheme to one another except the commission of the check-cashing operation itself. Although the opinion quotes extensively from Boyd, initially, and does include language about necessity to prove a decision-making structure, that was not the basis for the decision.
Both points of view on the enterprise issue draw on language from United States v. Turkette, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). That case determined that “enterprise,” as used in the federal RICO statute, encompassed both legitimate and illegitimate enterprises. It said the primary purpose of RICO was to cope, with the infiltration of legitimate business by organized crime. In view of its remedial purpose, the Court gave “enterprise” a broad definition rather than a limited one. It also emphasized that the evidence in that case disclosed the professional nature of the organization and the execution of a number of distinct criminal acts. Concerning what an enterprise is, the Court said it is proved by “evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit.” 452 U.S. 576, 584, 101 S.Ct. 2524, 69 L.Ed.2d 246. It must exist separate and apart from the pattern of racketeering activity in which it is engaged. But nowhere in that opinion does one find the additional requirement that the state or government must show an organized structure with decision-making channels of authority.
We agree with Gross that such a showing is not required to prove an enterprise exists in a Florida RICO case. Thus, there was no necessity in this case for the trial judge to give the special instruction offered by the defense, which added that *222 refinement to the definition of “enterprise.” The trial judge gave the standard jury instruction, which essentially tracked the statute:
‘Enterprise’- means any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws' of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact, although not a legal entity; • and it includes illicit as well as licit enterprises and governmental, as well as other entities. A criminal street gang as defined in s. 874.03 constitutes an enterprise. . '
The defense had requested a jury instruction that referenced structure and a decision-making mechanism:
The State must prove' beyond a reasonable doubt the three elements of enterprise, the first element ongoing organization, refers to the superstructure' or framework of the association. The prosecution must show that the group has an identifiable decision-making structure and a mechanism for controlling and directing the group on an ongoing, rather than an ad hoc basis.
The second requirement to establish an enterprise is that various associates function as a continuous unit. This element requires the prosecution to show beyond a reasonable doubt some degree of temporal continuity.
The final element required to prove beyond a reasonable doubt the existence of an enterprise is that the organization have an existence separate and apart from the pattern of racketeering activity in which it engages. If there is nothing linking the members of the association to one another except the commission of the predicate criminal acts, then there is no enterprise, (emphasis added)
That instruction included language from Brown and had it not also included structure and decision making as a required element, it would have been proper and advisable for the trial court to have given it. However, a trial court has discretion and it should not give an instruction which is proper in some degree and improper or incomplete in others.[10]
We also conclude that in this case, the state offered substantial proof that an enterprise for RICO purposes existed and thus the trial court did not err in failing to grant Bejerano’s motion for a judgment of acquittal. The- evidence established that the named persons and clinics, or corporations, had a long-term, ongoing relationship with one another over a period of years. They associated, in fact, and on Bejerano’s part, he associated -with them and was employed by them. There was proof that the group of individuals and clinics played various roles over the time period but within a structured setting. And, there was substantial proof that the common purpose, shared by all, was to obtain ill-gotten money by working together to present insurance companies with fraudulent or bogus claims. No one person in the group could have accomplished this goal by him or herself. It took a de facto organization to accomplish the multiple criminal acts.. Thus, under the Turk-ette definition of enterprise, the state in this case proved an enterprise for RICO purposes existed.
Further, even if the Riccobene-Boyd definition of enterprise prevails, we think that the state sufficiently established that an enterprise existed in this case. It is remarkably similar to the third circuit’s opinion in United States v. Console, 13 F.3d 641 (3d Cir.1993), cert. denied, 511 U.S. 1076, 114 S.Ct. 1660, 128 L.Ed.2d 377 (1994), the same court that wrote Ricco-bene. In that case, partners in a law firm and a doctor in a medical practice carried out a scheme to defraud insurance companies by submitting inflated medical bills on behalf of accident victims represented by the law firm. The doctor accepted referrals from the law firm and also referred *223 his patients to the firm. The medical office sent medical bills to the law firm, which sent them on to insurance companies for payment. Both the medical office and the firm inflated the bills, added to them, and falsified them. The clients of the firm were also coached about what to tell the doctor in order to inflate their claims about injuries. When the doctor received payments from the insurance companies, the firm retained a share.
The Console court concluded that the government had established sufficient proof of the existence of an enterprise. The enterprise in that case was an association, in fact, composed of the law firm and the medical doctor and their employees and associates, designed to enrich one another through making false claims in personal injury cases. The defense argued that the government failed to show there was an organized structure for decision making. The court held that there was sufficient proof of that element. The lead law partner and the doctor initiated the arrangement and supervised the execution of their agreement. Under their supervision and that of other associates, their employees falsified bills and charts to meet the directions of the law firm. The court said the function of overseeing and coordinating the commission of the various criminal offenses, and continuing to provide some legitimate services, was sufficient to show there was a structure in the group for the making of decisions on an ongoing rather than an ad hoc basis. In our view, the instant case is indistinguishable from Console.
AFFIRMED.
HARRIS and PETERSON, JJ., concur.

. §§ 895.02(4); 817.234(l)(a), Fla. Stat. '

. § 817.034(4)(a)(3), Fla. Stat.

.§ 817.234(l)(a), Fla. Stat.

. Edgardo Rosa, Luis Portas, Miriam Portas, Erick Bernal, Horacio Valdes, Jose Martinez, Carlos Jaramillo, Ramiro Jaramillo and Jac-quelie Lopez.

. Dazam Medical, South Florida Medical, Optimum Diagnostic, Advance Medical, R & I Medical, M & J Medical Research, R & I Medical Reading Service, Haretford Institute, and C.H. of Central Florida.

. Soberon v. State, 545 So.2d 490 (Fla. 3d DCA 1989); La Polla v. State, 504 So.2d 1353 (Fla. 4th DCA 1987).

. United States v. Turkette, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); Brown v. State, 652 So.2d 877 (Fla. 5th DCA 1995).

. Bowden v. State, 402 So.2d 1173 (Fla.1981); State v. Whiddon, 384 So.2d 1269 (Fla.1980). The federal courts have also rejected the challenge that RICO is unconstitutionally vague. See United States v. Keltner, 147 F.3d 662 (8th Cir.), cert. denied, 525 U.S. 1032, 119 S.Ct. 574, 142 L.Ed.2d 478 (1998); Bingham v. Zolt, 66 F.3d 553 (2d Cir.1995), cert. denied, 517 U.S. 1134, 116 S.Ct. 1418, 134 L.Ed.2d 543 (1996); United States v. Stefan, 784 F.2d 1093 (11th Cir.), cert. denied, 479 U.S. 855, 107 S.Ct. 193, 93 L.Ed.2d 125 (1986).

. In Riccoberie, the court set forth three sub-elements necessary to prove an enterprise for RICO purposes: 1) proof of an ongoing organization; 2) proof that the associates functioned as a continuing unit; and 3) proof that the enterprise is an entity separate and apart from the pattern of activity in which it engages.

. Paris v. Bartfield, 160 Fla. 87, 33 So.2d 713 (1948).