COBB, J.
The appellant, Richard Helmadollar, was convicted after trial of one count of racketeering, one count of conspiracy to commit racketeering, and multiple counts of burglary and grand theft. The primary issue on appeal is whether the state failed to meet its burden as established by the Florida Supreme Court in Gross v. State, 765 So.2d 39 (Fla.2000) in regard to the racketeering counts.
Helmadollar contends that the trial evidence failed to establish the two elements necessary to prove an “enterprise” as that term is utilized in the Florida Racketeering Influenced and Corrupt Organizations (Florida RICO) Statute.[1] Those elements are: “(1) an ongoing organization, formal or informal, with a common purpose of engaging in a course of conduct, which (2) functions as a continuing unit.” Gross at 45. Helmadollar points out that this case is factually distinguishable from Bejerano v. State, 760 So.2d 218 (Fla. 5th DCA 2000), rev. denied, 779 So.2d 269 (Fla.2000) wherein we found a criminal enterprise was established. In that case, argues Helmadollar, it took a “de facto” organization to accomplish criminal acts and no one person in the group *821 could have accomplished the intended goal alone. See Bejerano at 222. Moreover, in that case the defendants had a long-term relationship with one another over a period of years.
On the other hand, says Helmadollar, in the instant case the relationship between the various defendants lasted only some three weeks, and their operation was much more chaotic and spontaneous, being prompted by the need for fast money to support an apparent group addiction to crack cocaine; moreover, the various burglaries at issue did not always have the same participants involved. Helmadollar argues that the organized structure and extended time frame present in Bejerano and Gross are absent in this case. He states in his brief: “These were a group of guys on a three-week crime spree committing burglaries in order to buy crack cocaine on a daily basis to support their habits.” According to Helmadollar, this activity simply does not rise to the level of “organized racketeering” envisioned by the Florida RICO statute.
In response, the state relies upon the analysis of the Florida Supreme Court in Gross in contending for a broader view of the statute:
By contrast, other circuits have adopted a broad view of Turkette’s [United States v. Turkette, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) ] definition of enterprise. Specifically, the Eleventh and Second Circuits have simply rejected the requirement of any “ascertainable structure.” The Eleventh Circuit has interpreted RICO to reach any group of individuals “whose association, however loose or informal, furnishes a vehicle for the commission of two or more predicate crimes.” United States v. Cagnina, 697 F.2d 915, 920 (11th Cir.1983)(quoting United States v. Elliott, 571 F.2d 880, 898 (5th Cir.1978)); accord United States v. Qaoud, 777 F.2d 1105 (6th Cir.1985). Similarly, the Second Circuit has held that an enterprise may be defined by what it does rather than by some “abstract analysis of its structure.” United States v. Bagaric, 706 F.2d 42, 56 (2d Cir.1983). Bagaric further points out that it is only natural to characterize as an enterprise a group of individuals who join together, and therefore are “associated in fact,” for the purpose of committing criminal activities. See id. at 56. This is the view approved by the Fourth District in Gross [v. State, 728 So.2d 1206 (Fla. 4th DCA 1999) ]. [Footnotes omitted],
765 So.2d at 44.
The state also cites from the Cagnina case, referenced in the above quote, in support of the broader view of RICO legislation:
The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct.
[[Image here]]
This Circuit has interpreted “enterprise” to include an informal criminal network engaged in racketeering activity, such as the association of Cagnina and his colleagues. In United States v. Elliott, 571 F.2d 880 (5th Cir.), cert. denied, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978), the Court held that a group of persons who had committed a variety of unrelated offenses with no agreement as to any particular crime could be convicted of a RICO offense, because they were associated for the purpose of making money from repeated criminal activity. The Court stated that RICO reaches any group of individuals “whose association, however loose or informal, furnishes a vehicle for the commission of *822 two or more predicate crimes.” (Emphasis added).
697 F.2d at 920-921.
The evidence in the instant case, says the state, shows numerous burglaries by Helmadollar acting in conjunction with several other named defendants, the regular use by the named defendants of three “fences” to whom the stolen goods were sold, more than 100 visits by Helmadollar to one particular fence, the targeting by the group of commercial business sites with high-end goods, the specific “ordering” of certain goods by the fences, and the even division by the codefendants of the payment received for stolen goods.
We agree with the state that the evidence adduced below met the standards prescribed in Gross. Moreover, we find no merit in Helmadollar’s arguments in respect to use of the term “organization” and the trial court’s denial of Helmadollar’s request for a jury instruction on the defense of voluntary intoxication.
AFFIRMED.
HARRIS and PALMER, JJ., concur.

. § 895.02(3), Fla. Stat.