W. SHARP, Judge.
Ponds appeals from a judgment and sentence for armed car jacking.[1] He argues that an essential element of the offense had not been proven — that he used a firearm during the course of taking the car, although the evidence at trial established he used a firearm to rob the victims of money. We affirm.
Florida’s ear jacking statute provides as follows:
(1) “Car jacking” means the taking of a motor vehicle which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the motor vehicle, when in the course of the taking there is the use of force, violence, assault, or putting in fear.
(2)(a) If in the course of committing the car jacking the offender carried a firearm or other deadly weapon, then the car jacking is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084.
(b) If in the course of committing the car jacking the offender carried no firearm, deadly weapon, or other weapon, then the car jacking is a felony of the first degree,....
§ 812.133, Fla.Stat. (1995).
Assuming that Pond’s point on appeal is preserved because if established, it would constitute fundamental error,[2] we find no error in this case. The evidence at trial established that Ponds and a co-defendant, Dixon, asked Hollinger for a ride to a gas station at a time when Hollinger and Williams were seated in Hollinger’s car at a shopping mall. During the ride, they directed Hollinger to turn the car into a subdivision. Ponds pulled out a gun and told Hol-linger to stop the car. After the car was *686 stopped, Ponds pointed the gun at Hollinger and asked where their money was.
Williams said he had no money. The code-fendant told Ponds to: “Go on and shoot them niggers. They’re hesitating.” After he repeated that threat again, Williams and Hol-linger took money from their pockets and gave it to the co-defendant.
The co-defendant got out of the car and walked to the driver’s door. He tried to open it but it was locked. He then went to the front passenger door and told Williams to get out. He told Williams to get into the back seat, but Williams ran away. Hollinger quickly exited the front passenger’s door and ran also. Ponds and the co-defendant talked together outside the car. Then they got into the car and backed slowly away.
Subsection (3) of the car jacking statute defines what is meant by “in the course of committing” a ear jacking:
(a) An act shall be deemed “in the course of committing the car jacking” if it occurs in an attempt to commit car jacking or in flight after the attempt or commission.
(b) An act shall be deemed “in the course of the taking” if it occurs either prior to, contemporaneous with, or subsequent to the taking of the propeiiy and if it and the act of taking constitute a continuous series of acts or events, (emphasis supplied)
These definitions delineate the time boundaries for the commission of the offense. They make clear that the use of force, violence or putting in fear may occur prior to, at the same time as, or subsequent to the actual taking of the vehicle, provided they constitute a continuous series of acts or events. In the instant case, the victims were put in fear from the moment Ponds pulled a gun on them and pointed it at Hollinger. Ponds and the co-defendant then robbed the two victims and tried to force them into the back seat, preparatory to driving off in the car. When that plan was foiled by the victims’ escape, they took the car. This could have been part of the original plan, or a means to escape. Either satisfies the statute.
These events constitute a continuous series of acts perpetrated by Ponds and his co-defendant, culminating in the taking of the vehicle. As such, they fit the statutory definition of car jacking in section 812.133(1), as well as the aggravated charge in subsection (2)(a), because Ponds was carrying a firearm. Section (2)(a) does not require that a firearm actually be used in the car jacking, only carried. However, pursuant to the definitions of subsection (3)(b) quoted above, the firearm was used in the car jacking because Ponds used the firearm in the robberies, and they were prior, continuous events leading to the theft of the car. See Mason v. State, 665 So.2d 328 (Fla. 5th DCA 1995); Smart v. State, 652 So.2d 448 (Fla. 3d DCA 1995), rev. denied, 660 So.2d 714 (Fla.1995).
AFFIRMED.
DAUKSCH and GOSHORN, JJ., concur.

. § 812.133(2)(a), Fla.Stat.

. Troedel v. State, 462 So.2d 392, 399 (Fla.1984); Brown v. State, 652 So.2d 877, 881 (Fla. 5th DCA 1995); Williams v. State, 516 So.2d 975, 9,78 (Fla. 5th DCA 1987), rev. denied, 525 So.2d 881 (Fla.1988).