PER CURIAM.
Twila Weinacht appeals the judgment and sentence for four of nine counts of criminal activity, arising from various drug purchases between 1993 and 1997. Wein-acht argues that the trial court erred in denying a motion for judgment of acquittal on counts 1 and 2, violations of the Racketeer Influenced and Corrupt Organization Act (RICO). Weinacht also argues that the trial court erred in refusing to sever counts 8 and 9, possession of cocaine and drug paraphernalia.[1] We agree with both arguments and reverse.
First, Weinacht argues that the State failed to prove a violation of RICO because it failed to establish the existence of an enterprise. Section 895.03(3), Florida Statutes (1993), provides: “It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.” An “enterprise” is defined by section 895.02, Florida Statutes (1993) as follows:
(3) “Enterprise” means any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental, as well as other, entities.
There are three elements to an enterprise: (1) there must be a specified decision-making structure and a procedure for running the group on an ongoing, as opposed to an ad hoc, basis; (2) the members of the group must work as a continuous unit; and (3) the group must have an existence distinct from the racketeering activity. See Boyd v. State, 578 So.2d 718, 721-22 (Fla. 3d DCA1991).
The Third District has noted the rationale behind the first element:
Any two criminal acts will necessarily be surrounded by some degree of organization and no two individuals will ever jointly perpetrate a crime without some degree of association apart from the commission of the crime itself. Thus unless the inclusion of the enterprise element requires proof of some structure separate from the racketeering activity and distinct from the organization which is a necessary incident to the racketeering, the act simply punishes the commission of two of the specified crimes within a 10-year period. Congress clearly did not intend such an application of the Act.
*1199 Id. at 722 (quoting United States v. Bledsoe, 674 F.2d 647, 664 (8th Cir.1982)).
In this case, the State alleges that the enterprise consisted of Dan Smith, who would finance drug purchases; John Golladay, Weinacht’s brother, who would pick up and deliver the drugs; and Wein-acht, who would arrange for the drug purchases and sales. However, the drug purchases in this case were more ad hoc than ongoing. Weinacht contacted the dealers sporadically. Sometimes Weinacht picked up the drugs herself, sometimes she sent Golladay. Sometimes Smith and Golladay bought their own cocaine. Weinacht did not always resell the cocaine, but often bought just enough for her personal use. On several occasions, Weinacht supplied the dealers with cocaine. Also, Weinacht did not always get the drugs on Smith’s credit; she also paid cash and exchanged sex for the drugs. Because there was no evidence of a specified decision-making structure, we conclude that the State did not prove the existence of an enterprise. Accordingly, the trial court erred in failing to grant a judgment of acquittal on counts 1 and 2. Further, Weinacht correctly argues that counts 8 and 9, which alleged possession of cocaine and drug paraphernalia when the police stopped the car Weinacht was driving on August 19, 1997, are not part of the pattern of racketeering from which counts 1 through 7 arose. In December 1997 the State added counts 8 and 9 by an amended information which it filed almost two years after the initial information. Counts 1 through 7 all arose on or before November 8, 1995. The State claims that counts 8 and 9 serve to demonstrate the continuing nature of the racketeering activity in that Weinacht had found a new financier to replace Smith, who had been incarcerated.
In cases involving new predicate acts, the State must prove that each of the predicate acts corresponds to the same pattern of racketeering activity. See Cheffer v. Judge, 614 So.2d 632, 633 (Fla. 4th DCA 1993). “It is settled law that separate offenses may not be joined where the basis for the joinder is the similarity of the circumstances for the charged offenses.” Boyd, 578 So.2d at 723. This rule serves to prevent finders of fact from improperly considering evidence on one charge to dispel doubts regarding another charge. Id.
Counts 8 and 9 occurred while the other alleged members of the enterprise, Smith and Golladay, were in jail. Therefore, counts 8 and 9 could not have been part of any ongoing scheme to purchase and resell drugs using Smith’s money and Golladay’s transportation. The State’s allegation that Weinacht had continued the enterprise with a new financier merely supports the conclusion that the alleged Weinacht-Smith-Golladay enterprise was dissolved. Accordingly, we are compelled to reverse and remand counts 8 and 9 with directions for the trial court to conduct a new trial on these two charges.
We reverse counts 1 and 2 with directions to the trial court to grant judgments of acquittal on those counts. Because the judgments of acquittal on counts 1 and 2 will change the sentencing score-sheet, on remand the trial court should conduct a new sentencing hearing on counts 3 through 7. Further, we reverse and remand counts 8 and 9 for a new trial.
PARKER, A.C.J., and ALTENBERND and NORTHCUTT, JJ„ Concur.

. Weinacht does not challenge her convictions on counts 3 through 7 on appeal. Therefore, we do not address those convictions.