# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2021-2114
_____

ZACHARY WESTER,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Jackson County.
James J. Goodman, Judge.

November 13, 2024

M.K. THOMAS, J.

Zachary Wester, a sheriff's deputy, was found guilty on nineteen of sixty-seven charged counts, including one count of racketeering under section 895.03(3), Florida Statutes (2021), Florida's Racketeer Influenced and Corrupt Organization Act (RICO Act). Wester raises three issues on appeal, only one of which warrants discussion. He argues that the trial court reversibly erred in denying his motion for judgment of acquittal (JOA) on the racketeering charge because the State failed to establish the required element of a racketeering "enterprise." Specifically, he argues that because the State acknowledged that he acted alone in the commission of the crimes, an enterprise could not have existed. The issue is a matter of first impression for this Court. We rephrase the salient legal question presented as follows: Whether,

under the RICO Act,[1] the State must prove that the enterprise in which the defendant is alleged to have participated or been employed by was being used by at least two persons with the understood purpose of accomplishing some illegal objective or end? Because we find that the RICO Act requires the State to do so, Wester's judgment and sentence as to the racketeering count must be reversed and the case remanded for resentencing. Further, on our own motion, we certify the above question to the Florida Supreme Court as a matter of great public importance.

## I. *Facts*

The basic but disturbing facts of this case are not in dispute. In 2016, Wester began working for the Jackson County Sheriff's Office (JCSO) as a deputy. In the following years, Wester conducted traffic stops while working his assigned area alone. While performing searches during traffic stops, Wester planted narcotics in selected vehicles. After Wester set up the unsuspecting and innocent individuals, they were arrested and charged with drug-related crimes, drastically impacting their lives. The crime spree came to an end only when an internal affairs investigation was initiated into Wester's unauthorized disconnection of his body camera during the traffic stops.[2]

As a result of the internal affairs investigation, Wester was suspended, and his patrol vehicle was impounded. A drug dog alerted to the presence of drugs in his patrol vehicle. Upon searching the vehicle, a Crown Royal bag was discovered containing a syringe and plastic bags containing marijuana, methamphetamine residue, and prescription pills. Wester was charged by amended information with sixty-seven separate counts: (Count 1) racketeering; (Counts 2–13) official misconduct; (Counts 14–25) perjury; (Counts 26–37) fabricating evidence; (Counts 38–

---

[1] The RICO Act is set forth in sections 895.01 through 895.06, Florida Statutes. The statutory references in this opinion are to the 2021 version of Florida Statutes.

[2] Per JCSO procedure, body cameras were to remain operating from the beginning to the end of every traffic stop.

2

49) possession of a controlled substance; (Counts 50–60) possession of drug paraphernalia; and (Counts 61–67) false imprisonment. The information listed the predicate acts for the racketeering count as misuse of office, perjury, tampering with evidence, violations of drug abuse and prevention, and false imprisonment.

A jury found Wester guilty of official misconduct, perjury, fabricating evidence, false imprisonment (as it relates to three individuals who were his victims during his drug-planting spree), and several counts of possession of a controlled substance and drug paraphernalia, as well as the one count of racketeering. The trial court adjudicated Wester guilty and sentenced him to approximately twelve and a half years in prison.[3]

## II. Analysis

Wester argues on appeal, as he did below in support of his motion for JOA, that the State failed to prove the "enterprise" element for a racketeering conviction under section 895.03(3). In the information and at trial, the State identified the JCSO as the purported "enterprise." Wester contends that no "enterprise" existed for three reasons: 1) the JCSO could not be considered the "enterprise," since he acted alone and not in concert with another officer or any individuals at the JCSO; 2) he acted in complete contradiction to what the JCSO stands for; and 3) his actions in no way benefited the JCSO. He interprets the statutory definition of "enterprise" as requiring a common purpose or acting in concert with others in the purported "enterprise," here the JCSO. Conversely, the State argues that the RICO Act does not require the actions of more than one individual to satisfy "enterprise," nor does it require the JCSO to be corrupt or complicit with Wester. Specifically, so long as Wester could not have committed the criminal offenses absent his job as a deputy sheriff and without the

---

[3] The trial judge ordered consecutive sentences on all the non-RICO counts, adding up to 12 years, 6 months, and 8 days, with the 5-year RICO sentence to run concurrently.

resources of the JCSO, the elements of enterprise are sufficiently satisfied.

"The standard of review on a motion for judgment of acquittal is de novo." *Cameron v. State*, 290 So. 3d 632, 633 (Fla. 1st DCA 2020) (citing *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002)). "Where the State has produced competent evidence to support every element of a crime, the denial of a judgment of acquittal must be affirmed." *Id.* (citing *Anderson v. State*, 504 So. 2d 1270, 1271 (Fla. 1st DCA 1986)). Similarly, questions of law, including questions of statutory construction, are reviewed de novo. *See Williams v. State*, 244 So. 3d 356, 359–60 (Fla. 1st DCA 2018).

*Florida's RICO Act*

In 1977, Florida enacted its own version of RICO. The preamble of chapter 77-334, 1977 Florida Laws, reads in relevant part as follows:[4]

> WHEREAS, *organized* crime is infiltrating and corrupting legitimate businesses operating within this state and this infiltration and corruption uses vast amounts of money, power, and all the techniques of violence, intimidation, and other forms of unlawful conduct to accomplish its goals, and WHEREAS, in furtherance of such infiltration and corruption, *organized* criminal operatives utilize and apply to their unlawful purposes laws of the State of Florida conferring and relating to the privilege of engaging in various types of business enterprises, and WHEREAS, infiltration and corruption of legitimate business provide an outlet for illegally obtained capital, harm innocent investors, entrepreneurs, merchants, and consumers, interfere with free competition, and thereby constitute a substantial

---

[4] We acknowledge that "[t]he preamble is no part of the act, and cannot enlarge or confer power nor control the words of the act, unless they are doubtful or ambiguous." *Dorsey v. State*, 402 So. 2d 1178, 1181 (Fla. 1981).

danger to the economic and general welfare of the State of Florida . . . .

(Emphasis added.)

Chapter 895, Florida Statutes, is titled "Offenses Concerning Racketeering and Illegal Debts." Section 895.01, Florida Statutes, declares, "Sections 895.01-895.06 shall be known as the 'Florida RICO (Racketeering Influenced and Corrupt *Organization*) Act.'" (Emphasis added.) Undeniably, the target of the RICO Act is organized crime.

The subsection of Florida's RICO Act under which Wester was convicted, provides as follows:

It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, *in such enterprise through a pattern of racketeering activity* or the collection of an unlawful debt.

§ 895.03(3), Fla. Stat. (emphasis added).

The RICO Act defines key terms or phrases as follows:

"**Enterprise**" means any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental, as well as other, entities. A criminal gang, as defined in s. 874.03, constitutes an enterprise.

§ 895.02(5), Fla. Stat. (emphasis added).[5]

"**Pattern of racketeering activity**" means engaging in at least two incidents of racketeering conduct that have

_____

[5] Since its enactment in 1977, the definition of "enterprise" has remained unchanged.

the *same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents*, provided at least one of such incidents occurred after October 1, 1977, and that the last of such incidents occurred within 5 years after a prior incident of racketeering conduct.

§ 895.02(7), Fla. Stat. (emphasis added).

**"Racketeering activity**" means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit: [certain enumerated offenses].

§ 895.02(8), Fla. Stat. (emphasis added).[6]

The State's information specifically charged as follows: "Zachary Wester, while employed by, or associated with, an enterprise, as defined by section 895.02(5), Florida Statutes, that is, the Jackson County Sheriff's Office, did conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity, as defined by section 895.02(7) and (8), Florida Statutes , . . . ."

### Florida & Federal RICO Acts

"The Florida RICO statute was largely modeled after the Federal RICO Statute." *Gross v. State*, 765 So. 2d 39, 42 (Fla. 2000). The definitions of "enterprise" and "pattern of racketeering" are almost identical in both. However, the Florida Legislature crafted a more expansive version, incorporating over ten

---

[6] Florida's definition of "racketeering activity" is much broader than its federal counterpart, incorporating additional listed crimes (misdemeanors and felonies) qualifying as "racketeering activity" and applying more severe penalties. *See* § 895.02, Fla. Stat. Section 895.02(8) now lists over fifty-one qualifying categories of crimes and incorporates a catch-all phrase of any crimes listed in the Federal RICO Act ("Any conduct defined as 'racketeering activity' under 18 U.S.C. s. 1961(1).").

additional qualifying entities in its "enterprise" definition and an exhaustive list of predicate crimes.[7]  Furthermore, Florida added the following substantive phrase to its definition of "enterprise," absent from its federal version: "and it includes illicit as well as licit enterprises and governmental, as well as other, entities. A criminal gang, as defined in s. 874.03, constitutes an enterprise." § 895.02(5), Fla. Stat. Unlike Florida's version, the federal RICO law includes a liberal construction provision. *See* Etan Mark, Monica F. Rossbach, *Que Rico? Discarding the Fallacy that Florida Rico and Federal Rico Are Identical*, 86-Jan Fla. B. J. 10, (2012).

In its creation, the very *raison d'etre* of RICO was the control of organized crime. The Florida Legislature purposefully and repeatedly included the terms "organization" and "organized crime" in its drafting of the RICO Act. "[I]t was the declared purpose of Congress 'to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence-gathering process, by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime.'" *U.S. v Turkette*, 452 U.S. 576, 589 (1981) (citing RICO, 84 Stat. 923). In *Bowden v. State*, 402 So. 2d 1173, 1174 (Fla. 1981), the Florida Supreme Court expressed that the appropriate target of a RICO prosecution is the "professional or career criminal." "By requiring a continuity of criminal activity as well as a similarity and interrelatedness between these activities, the target of RICO Act prosecutions will be, appropriately, the professional or career criminal and not non-racketeers who have committed relatively minor crimes." *Id.* In 2000, this was reiterated in *Gross*: "RICO was not intended to target ordinary criminals regardless of the number of their crimes nor to simply expand the breadth of the general conspiracy laws." 765 So. 2d at 45.

---

[7] Even including crimes such as removing the ears of pigs, sheep or cattle before dressing them and violations of alcohol storage laws. *See* Jackeline Dowd, *Interpreting RICO: In Florida, the Rules Are Different*, 40 U. Fla. L. Rev. 127, 137 (1988).

We now turn to the text of the RICO Act. The plain language of section 895.03(3), and its syntax, dictates that a RICO violation is dependent on a series of relationships: "It is unlawful for any person . . . employed by, or associated with, any enterprise . . . to conduct or participate . . . in such enterprise through a pattern of racketeering activity . . . ." § 895.03(3), Fla. Stat. Breaking the text down segmentally instructs that the "person" must be "associated" with the "enterprise"; the "person" must "conduct or participate" in the "enterprise's" affairs; the "conduct or participation" must be "through" "racketeering activity"; and the "racketeering" must form a "pattern." Next, we analyze these relationships. As will be discussed later, when read in context and with the Act's purpose in mind, these affairs must have an organized criminal purpose, even if under the aegis of some legitimate endeavor on its surface.

## A. *"Enterprise"*

The Legislature's deliberate use in section 895.03(3) of the ordinary term "person" along with the distributive determiner "any" requires recognition of its singular tense. But the "any person" reference should not be interpreted blindly as declaring the Act's applicability to a sole bad actor, as such an application eviscerates the remaining provision of the statute. Logically, the use of the singular noun "person" may indicate a charging or procedural component. Consideration of the remaining portions of the statute provides context.

In 2000, the Florida Supreme Court settled an inter-district conflict in *Gross*. *See* 765 So. 2d at 39. The Third District Court of Appeal had reversed a RICO conviction because the State failed to prove the element of "enterprise."[8] *Boyd v. State*, 578 So. 2d 718 (Fla. 3d DCA 1991). The Third District required three elements to satisfy "enterprise": 1) an ongoing organization, formal or

---

[8] *Boyd* was convicted of RICO and various other crimes committed during a two-week crime spree of robberies, auto theft and second-degree murder. He committed some of the crimes alone and others with various individuals. *Gross*, 765 So. 2d at 42.

informal, with an identifiable decision-making structure for controlling and directing the group rather than an ad hoc basis; 2) that various associates operate as a continuous unit; and 3) that the organization have an existence separate and independent from the pattern of racketeering in which it engages. *Gross*, 765 So. 2d at 42. It also required a "purposive systematic arrangement between members of the group" and that the "RICO statute was not intended for the prosecution of criminals who merely got together from time to time to commit sporadic criminal acts." *Id*. Accordingly, Boyd's racketeering conviction was reversed because "if there was nothing linking the members of the association to one another except the commission of the predicate criminal acts, then there is no enterprise." *Boyd*, 578 So. 2d at 722.

The Fourth District Court rejected the *Boyd* elements and applied a broader definition of "enterprise." *Gross v. State*, 728 So. 2d 1206, 1208–09 (Fla. 4th DCA 1999). In affirming Gross's conviction for RICO violations, the court rejected any requirement of a decision-making structure. *Id*. Gross was part of a group, including two police officers, who robbed suspected drug dealers. *Id*. at 1207. Ultimately, our supreme court resolved the interdistrict conflict by adopting the broad application of the term "enterprise" as applied in *Gross*. Now, to prove enterprise the State must prove only "(1) an ongoing organization, formal or informal, with a common purpose of engaging in a course of conduct, which (2) functions as a continuing unit." *Gross*, 765 So. 2d at 45 (citing *United States v. Turkette,* 452 U.S. 576, 583 (1981)).

Language in *Gross* and other opinions with fact patterns involving multiple actors utilize plural tense in addressing statutory requirements. For example, in citing to the Eleventh Circuit, the supreme court advised, "The Eleventh Circuit has interpreted RICO to reach any group of individuals 'whose association, however loose or informal, furnishes a vehicle for the commission of two or more predicate crimes.'" *Id*. at 44 (citing *United States v. Cagnina,* 697 F.2d 915, 920 (11th Cir.1983)). Ultimately, *Gross's* interpretation is that at least two people, loosely organized, using some artifice to leverage their criminal objectives, is required.

In *Gross,* our supreme court made a critical distinction: "[t]he 'enterprise' is an entity for the common purpose of engaging in a course of conduct. The 'pattern of racketeering activity' is, on the other hand, a series of criminal acts." *Id.* at 43 (citing *Turkette*, 452 U.S. at 583 (1981)). Thus, an analysis in which the "enterprise" is considered to be the criminal activity is misplaced. *Gross* explained as follows:

> The difference among the circuits in the definition of the enterprise element rests mainly on differing views of the legislative intent behind Federal RICO. The narrow view is essentially predicated on the belief that RICO was enacted to stop the infiltration of organized crime and racketeering into legitimate organizations. *See Bledsoe,* 674 F.2d at 661. Hence, the opinions adopting this view point out that at the time of the enactment of RICO, Congress was specifically concerned with the proliferation of organized crime into labor unions and various legitimate industries. *See id.* Consequently, RICO was enacted to combat the spread of organized crime which threatened the viability of businesses and the economic state of the country itself. In that vein, RICO was not intended to target ordinary criminals regardless of the number of their crimes nor to simply expand the breadth of the general conspiracy laws.

*Id.* at 44–45. Relevant to our analysis, *Gross* further clarified, "The first element, requiring proof of the existence of an ongoing organization with a common purpose of engaging in a course of conduct, was established by the State. This element may be proved with evidence of the common purpose among the members." *Id.* at 46.

In *Wilson v. State*, 596 So. 2d 775, 781 (Fla. 1st DCA 1992), Wilson argued that his RICO conviction was improper because he was charged with associating with an enterprise that consisted only of himself. In the information, the State identified Wilson as the enterprise; that is, that Wilson was employed by or associated with himself to conduct or participate in a pattern of racketeering activity. Wilson recruited four individuals in a scheme involving stolen and forged checks. Using stolen checks that Wilson made

payable to the four individuals, he had them deposit the checks into their respective bank accounts and then withdraw the money to be shared by the group. At trial, the State argued the four individuals helping launder the money were the "enterprise." *Id.* at 776.

In analysis, this Court stated "[i]f solo crimes by a self-employed person violated [the RICO Act] then the crime of racketeering, with its increased penalties, would apply to a substantial percentage of crimes." *Id.* at 781 (citing *Masonoff v. State*, 546 So. 2d 72, 74 (Fla. 2d DCA 1989)). It was determined that the fact that Wilson operated through a sole proprietorship was immaterial, explaining, "The relationship of a person with an enterprise requires a relationship involving two humans—not a person and some type of property interest." *Id.* (citing *Masonoff*, 546 So. 2d at 74).

Reversing Wilson's RICO conviction, this Court noted that no entity separate from Wilson, such as a sole proprietorship, was alleged to exist. *Id.* The charging information declared that Wilson himself was specifically alleged to be the enterprise as well as the person who associated with the enterprise. *Id.* This Court held that "[w]ithout some sort of identifiable legal or de facto entity which stands apart from the associating person, it cannot be said that an 'association' has occurred." *Id.* Thus, an association is required in the context of the enterprise.

In *Doorbal v. State*, 983 So. 2d 464 (Fla. 2008), the Florida Supreme Court declared, "[t]o satisfy the 'enterprise' element of the RICO statute, the State must demonstrate that a defendant *acted in concert with at least one other person, organization, or entity*." 983 So. 2d at 492 (emphasis added) (citing *State v. Jackson,* 677 So. 2d 938, 941 (Fla. 2d DCA 1996)). Doorbal appealed the trial court's denial of his motion to sever his trial from his co-defendants. *Id.* at 492. Our supreme court affirmed the denial, in part on grounds of preservation, because under the RICO statute, Doorbal's involvement with the co-defendants was an element of the crime that the State was required to prove. *Id.* Thus, consistently, enterprise has been defined as contemplating some concerted action between at least two people, seeking to use some artifice of organization to leverage a criminal objective.

11

The plain text of the RICO Act in its entirety, *Gross*, and *Doorbal* compel a conclusion that the definition of "enterprise" has as its purpose the specification of all that an enterprise *could be*, but satisfaction of the broad definition (which the JCSO satisfies because of the universality of the definition) has at its purpose something other than serving as an element of the offense—if a definition includes everything, it excludes nothing. The RICO Act is about targeting organizations that leverage criminal conduct. But RICO differs from "conspiracy." RICO violations are punished more harshly because of the organizational component of the offense and the use of an "enterprise" (again which can be almost anything, i.e. sole proprietorship, partnership, licit or illicit, government or private, etc. . . . ) as an artifice or tool to facilitate the organized criminal conduct. This distinction makes a RICO violation especially dangerous and harmful to the public.

While licit or illicit activities may be involved in racketeering, for the crime to be charged under RICO, the enterprise must be shown to be used by two or more people to facilitate some illegal objective. When Congress in 1970 and then the Florida Legislature in 1977 enacted their respective RICO Acts, the target was a specific brand of crime: mafia related groups. Over time the application broadened to capture all kinds of organized crime, including for example, criminal street gangs. Arguably, the stretching of the RICO Act beyond its intended purpose results in "justice made blind." Alain L. Sanders, *Law: Showdown at Gucci*, Priscilla Painton/New York, Time Magazine, Aug. 21, 1989. But, even granting prosecutors extraordinary latitude in its application, RICO is intended to focus on "patterns of criminal behavior rather than individual crimes." *Id.* We move now to the critical, interdependent relationship between "enterprise" and "through a pattern of racketeering activity."

### B. *"Through a Pattern of Racketeering Activity"*

The significance of the phrase "through a pattern of racketeering activity" cannot be overstated. Our supreme court has distinguished the term/phrase "enterprise," and "pattern of racketeering activity" as follows:

That a wholly criminal enterprise comes within the ambit of the statute does not mean that a "pattern of racketeering activity" is an "enterprise." In order to secure a conviction under RICO, the Government must prove the existence of an "enterprise" and the connected "pattern of racketeering activity." *The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct.* The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. *The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.* The latter is proved by evidence of the requisite number of acts of **racketeering committed by the participants** in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of enterprise at all times remains a separate element which must be proved by the Government.

*Gross*, 765 So. 2d at 43 (emphasis added in bold) (quoting *Turkette,* 452 U.S. at 583).

It is unnecessary to decipher the internal phrase "pattern of racketeering" as this connotes only the commission of a requisite number of predicate acts within a specified time. *See* § 895.02(7), Fla. Stat. Thus, we contemplate the meaning of the qualifying preposition "through." Illustrative is the Second District's analysis in *Jackson v. State*, 858 So. 2d 1211 (Fla. 2d DCA 2003). Our sister court reversed Jackson's conviction for racketeering, finding the State failed to prove that he was a member of a gang, he engaged in transactions with them or on their behalf, or shared proceeds. *Id.* at 1212. Instead, the only evidence showed Jackson knew and hung out with gang members, but no evidence established his association included complicity with the group—i.e.. that he was complicit with the group "through a pattern of racketeering activity." *Id.* Because the evidence showed that Jackson, acting

alone, only engaged in ordinary criminal activity, the RICO conviction was reversed. *Id.* at 1213.

"Florida courts have looked to the federal courts for guidance in construing RICO provisions." *Gross*, 765 So. 2d at 42–43. Several federal cases are illustrative. In *United States v. Cauble*, 706 F.2d 1322, 1329 (5th Cir. 1983), Cauble was charged with multiple RICO violations for his involvement in the "Cowboy Mafia" through the use of his various corporations in the commission of the criminal acts. In affirming the RICO convictions, the federal court instructed, "RICO criminalizes the conduct of an enterprise through a pattern of racketeering activity and not merely the defendant's engaging in racketeering activity. Therefore, there must be a nexus between the enterprise, the defendant, and the pattern of racketeering activity." *Id.* at 1331–32. *Cauble* further declared that the nexus did not require that the enterprise have benefitted from the racketeering activity. The federal court held that there must be an effect on the enterprise, but the effect may be direct, such as the deposit of money in the enterprise's bank account; or indirect, such as the retention of the enterprise's existing clients. *Id.* at 1332–33, 1344. However, the government need not prove that the racketeering activity benefited or "advanced the affairs of" the enterprise. *Id.* at 1332 n.24 (citing *United States v. Hartley*, 678 F.2d 961, 990–91 (11th Cir. 1982); *United States v. Welch*, 656 F.2d 1039, 1062 (5th Cir. 1981)).

In *United States v. Welch*, the court addressed the nexus required of a RICO conviction. Welch—who was the sheriff—plus two of his deputies, and a city commissioner, were charged with multiple crimes, including a RICO charge. *Id.* at 1047–48. Welch was accused of facilitating illegal gambling because he failed to shut down illegal gambling operations despite knowing they existed. *Id.* at 1044–48. Welch challenged his RICO conviction, arguing that the government failed to show that the activities of the sheriff's office were conducted "through the acts of racketeering" given that no proof was offered that the predicate offenses "promoted or advanced" the affairs of the sheriff's office and that the proceeds Welch received from the racketeering went to himself and not the sheriff's office. *Id.* at 1060. Addressing the

nexus requirement, the Fifth Circuit did not apply the word "through" (in the phrase "through a pattern of racketeering activity") as requiring the enterprise to benefit from the racketeering activities, noting that all the statute required is that "the Government prove the affairs of the enterprise are conducted through a pattern of racketeering activity." *Id.* at 1061. Thus, it required only proof of "a relation between the predicate offenses and the affairs of the enterprise." *Id.* The RICO conviction was upheld. Of note, the fact pattern presented in *Welch* involved multiple complicit actors working within the sheriff's office, the enterprise.

In *United States v. Ruiz*, 905 F.2d 499, 500 (1st Cir. 1990), Ruiz appealed his conviction on racketeering and drug trafficking charges. Ruiz and his co-defendant were police officers. *Id.* They obtained cocaine from drug traffickers and, in return, allowed the drug traffickers to continue dealing drugs while providing them with confidential police information. *Id.* On appeal, Ruiz argued that the crimes for which he was charged did not show "racketeering activity" because the necessary connection between the group and the enterprise, the police department, was lacking. *Id.* at 504. The federal court disagreed, finding as follows:

> Ruiz's acquisition of cocaine, and his *quid pro quo* conduct, were inextricably intertwined with his authority and activities as an employee of the [police department]. His ability to intimidate dealers with the power of arrest, his access to RMV data and inside information absent warrants, his assistance in transporting cocaine, and his ability to supply ammunition were all made possible through, or facilitated by, his employment. In fine, defendant's illegal activities were clearly helped along by the authority vested in him as a police officer and by the reactions (fear and timorousness in some instances) which a police officer, uniquely, has the ability to engender in others by virtue of his position.

*Id.* The court later opined that "[t]he fact that the activity continued for so long fully buttressed the conclusion that Ruiz had set up shop and was engaged in a regular way of doing illicit business under the aegis of the enterprise." *Id.* at 505. Ruiz's labors

on behalf of the criminal activity were integrated with his police work and the rewards of his complicity (money) were intermixed with his law enforcement role. *Id.* at 504. The court's analysis was that "enterprise" dealt with the method(s) through which the prohibited activities were carried out. Again, in *Ruiz* there were multiple defendants.

Compare now the case of *United States. v. Shamah*, 624 F.3d 449 (7th Cir. 2010). Shamah was a police officer who decided, with his partner, to supplement his income by stealing money and drugs from drug dealers. *Id.* at 451. They stole the drugs with the intent to plant the drugs on individuals during future stops. *Id.* at 452. Shamah and his partner were arrested and charged with conspiracy in violation of RICO, among other charges. *Id.* at 451–52. While Shamah's partner pleaded guilty, Shamah proceeded to trial. *Id.* On appeal, Shamah argued that he could not be guilty under RICO because, in part, he was not an operator or manager of the police department for which he worked. *Id.* at 452. In affirming Shamah's conviction, the court noted that RICO cases include those "where a criminal uses an enterprise to engage in criminal activities but is generally 'content to allow it to conduct its normal, lawful business.'" *Id.* at 455 (quoting *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997)). The court explained why Shamah's position within the police department supported his RICO conviction:

> As the public face of the department, Shamah was given a great deal of responsibility and trust in operating and directing its affairs. His manipulation of this power transformed legitimate police functions into arms of his illegal endeavors. He usurped the department's identity and turned it into a criminal enterprise hiding behind a facade of justice.
>
> The government presented ample evidence that Shamah and [co-defendant] were not acting as "mere" law-abiding police officers when they forced civilians to part with money and drugs, performed illegal arrests and stops, and planted evidence on civilians. Given his discretion and authority as a police officer, and the way in which he chose to direct his powers, Shamah operated

16

or managed the integral duties of the police department's daily affairs. And the government presented sufficient evidence for the jury to conclude that Shamah conducted the affairs of the enterprise.

*Id.*

In *United States v. Presgraves*, 658 F. Supp. 2d 770, 774 (W.D. Va. 2009), Presgraves, the Sheriff of Page County, was indicted on twenty-three counts including RICO, sexual assault, and tampering with a witness. In moving to dismiss the RICO charge he did not dispute that the sheriff's office was an enterprise under RICO or that he operated or managed the enterprise. Instead, he argued that the predicate acts of racketeering charged were unrelated to the affairs of the sheriff's office, and that they did not constitute "a pattern of racketeering activity." *Id*. at 775. The federal court rejected the challenge, finding the fact that Presgraves physically used his office to carry out the crimes and that there was no benefit to the enterprise that is required to be proven, he satisfied the nexus requirement. *Id*. at 776.

Although the above federal cases involved corrupt law enforcement officers, like Wester's occupation in this case, and recognized the critical interplay between "enterprise" and "through a pattern of racketeering activity," the issue of required complicity among or between multiple actors was not at issue. However, the United States Supreme Court has explicitly rejected the interpretation of the federal RICO Act to include prosecution of sole actors in a civil context. *See Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993) ("Indeed, this Court previously has said that liability "depends on showing that the defendants conducted or participated in the conduct of the *'enterprise's* affairs,' not just their *own* affairs."). Similarly, in *United States v. Benny,* 786 F.2d 1410 (9th Cir.1986), *cert. denied,* 479 U.S. 1017 (1986), the Ninth Circuit declined to apply the RICO Act to sole bad actors:

> We adopt the Seventh Circuit's analysis as the rule for this circuit. The rule avoids the ontological conundrum of interpreting RICO to make liable an individual who associates with himself or herself, while it maintains at the same time RICO's ability to

discourage and punish illegal activity associated with various groups.

*Id.* at 1416.

Taken together, the plain text of Florida's RICO Act, *Doorbal,* and *Gross* compel the interpretation that through a "pattern of racketeering activity" buttresses the use and definition of "enterprise" in requiring some criminal design behind it, even if it is a legitimate business or endeavor being utilized. The pattern must have the "same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents." *See* § 895.02(7), Fla. Stat. Logically, one cannot participate in an "enterprise" *through* such a pattern (a pattern that must have similar intent, results, accomplices, victims, or motive, or some interrelation) unless the enterprise itself has some underlying criminal motive.

Here, there is no question that Wester was employed by or associated with the JCSO. Further, it is undisputed that he used the office of sheriff to carry out his crimes. That is to say, his acts were "inextricably intertwined" with his law enforcement duties and facilitated the prohibited acts. However, the evidence establishes that he acted alone and not in concert with any other individuals in the commission of the crimes "through" a pattern of racketeering activity. To apply the RICO Act otherwise, would rub against the plain text of the statute and extinguish any line of demarcation between simply committing the predicate acts (ordinary criminal activity) and the intent of the more severe ramifications of organized crime.

The RICO Act does not criminalize one person's use of his or her place of employment to commit related crimes. Instead, the crime exists when two or more people work together in some way, using any artifice or means of organization, to advance some criminal ends. RICO contemplates two or more people working together using even a legitimate business to facilitate or leverage a criminal purpose that may have been more difficult to accomplish alone. Because the crime set out in section 895.03(3) requires that the person be both associated with/employed by the "enterprise"

and to participate in it *through* a pattern of racketeering activity, there is every indication in the text that while the "enterprise" can be anything and still be an "enterprise," to prove the crime, there must be evidence that at least two people (not necessarily the defendant) worked together to put that enterprise to criminal use. The statute allows a person to be convicted of RICO, even if he was on the periphery and did not know all (or any) of the details of the "enterprise," provided he associated with or was employed by that criminal enterprise *and* participated in it (this aspect of the statute suggesting once again there has to be some agreed-upon criminal aspect to the enterprise) *through* at least two enumerated offenses having a similar intent, purpose, or set of victims. Put simply, "enterprise" serves to criminalize what the statute envisions as a supercharged conspiracy.

*Canons of Statutory Interpretation*

The Harmonious-Reading Canon also supports the interpretation of Florida's RICO Act that its violation requires multiple, complicit actors.

> The provisions of a text should be interpreted in a way that renders them compatible, not contradictory. . . . The imperative of harmony among provisions is more categorical than most other canons of construction because it is invariably true that intelligent drafters do not contradict themselves (in the absence of duress). Hence there can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously.

*Matheson v. Miami-Dade Cnty.*, 258 So. 3d 516, 522 (Fla. 3d DCA 2018) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 167, 180 (2012).

Accepting the State's purported application of the RICO Act to criminals acting alone would create unintended results. A plethora of examples can be imagined. Suppose that Ethel, a 76-year-old, who works at her church part-time as a volunteer bookkeeper, skims $5 from the church bingo pot on three occasions to fund her lunch. Under the State's proposed application, Ethel

would be subject to either indictment for petty theft (possible sentence of up to 60 days in jail) or for violation of the RICO Act (possible sentence of up to 30 years). Although she used an "enterprise"—a church that was separate and distinct from herself— and she could not have committed the crime if not for her job as the accountant, she did not act in concert with another or act in complicity with anyone else to carry out the pattern of racketeering activity. In practical application, the State's proposed interpretation of the RICO Act would at its core, only require the *existence* of an enterprise (a business, formal or informal, legal or illegal) as a necessary component of the crime. Respectfully, such an application discounts the plain text of the statute when applied in context and recognizing all required provisions, making it indistinguishable from application to everyday commission of predicate crimes.

Likewise, suppose Bob, the Wildlife and Fisheries Game Warden, is required by law to confiscate illegally taken grouper from any unlicensed fisherman. But instead of discarding the fish and letting it go to waste, Bob takes it home, grills and eats it. Under the State's proposed interpretation, Bob is guilty of racketeering. Although he acted alone and did not conspire with another to sell the fish and generate profits, he committed prohibited acts using his job, an enterprise.

Lastly, a fraternity member lives in the chapter house. He occasionally sells marijuana to various college students. Under the State's interpretation, the student is subject to prosecution under RICO. The enterprise is the fraternity/chapter house. Although there was no complicity by any other member or the fraternity, he is guilty of racketeering because he associated with an "enterprise" separate and distinct from himself. Such a tortured application of the RICO Act, a penal statute, results in predictable and unreasonable ambiguity.

Under the State's interpretation, every single criminal defendant who commits any third-degree felony punishable by no more than five years in prison, is guilty of a first-degree felony punishable by thirty years in state prison, simply because the defendant is employed or is somehow "associated" with another person or entity, neither of whom or which had any criminal

involvement in the commission of the predicate crime. The Legislature never intended to punish third-degree felons with first-degree penalties simply because they committed the third-degree felony while employed or associated with innocent parties or entities. The United States Supreme Court and other federal courts have condemned the State's proposed interpretation. *See Reves*, 507 U.S. 170; *Benny,* 786 F.2d 1410.

## *Rule of Lenity*

Lastly, the rule of lenity requires "that penal statutes must be strictly construed according to their letter." *Perkins v. State*, 576 So. 2d 1310, 1312 (Fla. 1991). "Therefore, any ambiguity or situation in which statutory language is susceptible to differing constructions must be resolved in favor of the person charged with an offense." *State v. Byars*, 823 So. 2d 740, 742 (Fla. 2002). "To the extent that section 775.021(1) expresses the rule of lenity, it is 'a canon of last resort and only applies if the statute remains ambiguous after consulting traditional canons of statutory construction.'" *Schmidt v. State*, 310 So. 3d 135, 137 (Fla. 1st DCA 2020) (Winokur, J., concurring) (quoting *Paul v. State,* 129 So. 3d 1058, 1064 (Fla. 2013)).

The punitive nature of the RICO Act makes it especially susceptible to the rule of lenity. Accordingly, if one considers subsections 895.03(2) and (3) to be equivocal regarding applicability to a sole bad actor, the ambiguity must be resolved in Wester's favor.

## *III. Conclusion*

Because the RICO Act does not apply to an individual who is associated with or employed by an enterprise, but who acts alone in use of such enterprise in the commission of prohibited criminal activities, we are compelled to vacate Wester's conviction for racketeering because the trial court reversibly erred in denying his motion for JOA below. Accordingly, the case is remanded for resentencing. The convictions for the remaining non-racketeering counts are affirmed.

This is a complex legal issue, and its answer has far-reaching impact. On our own motion, we certify the following question of great public importance to the Florida Supreme Court:

WHETHER, UNDER THE RICO ACT, THE STATE MUST PROVE THAT THE ENTERPRISE IN WHICH THE DEFENDANT IS ALLEGED TO HAVE PARTICIPATED IN OR BEEN EMPLOYED BY WAS BEING USED BY AT LEAST TWO PERSONS WITH THE UNDERSTOOD PURPOSE OF ACCOMPLISHING SOME ILLEGAL OBJECTIVE OR END?

AFFIRMED in part, REVERSED in part, and REMANDED; CERTIFIED QUESTION.

LEWIS, J., concurs; Osterhaus, C.J., concurs in part, and dissents in part, with opinion.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

OSTERHAUS, C.J., concurring in part, and dissenting in part.

I concur with my colleagues insofar as they affirm Mr. Wester's convictions and I join in the certified question. I respectfully dissent, however, with respect to their treatment of the racketeering issue. I see no problem with Wester's racketeering conviction. The text of Florida's Racketeer Influenced and Corrupt Organization Act (Florida's RICO Act), as well as factually similar cases, show that racketeering encompasses crimes like Wester's, where an individual employed by an entity activates the weight of that entities' authority and tools—the entire law enforcement system in Jackson County in this case—in a criminal scheme. Here, unbeknownst to the Sheriff's Office, Deputy Wester effectively "usurped the department's identity and turned it into a criminal enterprise hiding behind a facade of justice." *United States. v. Shamah*, 624 F.3d 449, 455 (7th Cir.

2010). Because Wester's false arrests and reports caused his victims to be wrongfully jailed by the Sheriff's Office, charged with crimes, and hauled before courts, his actions were covered by the racketeering statute. His racketeering conviction should be affirmed.

## I.

We review the trial court's denial of a motion for judgment of acquittal *de novo*. *See Kemp v. State*, 166 So. 3d 213, 216 (Fla. 1st DCA 2015). "In doing so, [this Court] must consider the evidence and all reasonable inferences therefrom in a light most favorable to the State." *Bradwell v. State*, 300 So. 3d 325, 327 (Fla. 1st DCA 2020).

As noted by the majority opinion, the basic facts aren't disputed. While working for the Jackson County Sheriff's Office (JCSO) part of Deputy Wester's job included making traffic stops. During a number of these stops, Wester planted narcotics in the vehicles of unsuspecting and innocent victims. Abusing the authority of the Sheriff's Office and his status as a sworn law enforcement officer, Wester wrongfully arrested multiple victims and, under the guise of doing regular police work, caused them to be jailed, falsely charged with drug-related crimes, and prosecuted.

Wester challenges his racketeering conviction on appeal by arguing that the State failed to prove the "enterprise" element required to convict him under Florida's RICO Act, § 895.03(3). At trial, the State identified the Sheriff's Office as the relevant "enterprise." But Wester contends that the Sheriff's Office fails to qualify as an "enterprise" under the Act because he did not act in concert with anyone at the Sheriff's Office; he acted in derogation of what the Sheriff's Office stands for; and the Sheriff's Office gleaned no benefit from his actions. He interprets the definition of "enterprise" to require a shared illicit purpose between himself and the Sheriff's Office in carrying out the criminal scheme. The State, on the other hand, argues that Florida's RICO Act doesn't require the Sheriff's Office or other officials to have been purposefully complicit in Wester's crimes. Instead, Wester's conviction should stand because he committed the crimes while employed by the

23

Sheriff's Office and only by leveraging the Office's authority, tools, and personnel to complete his crimes.

## II.

Turning to the text of Florida's RICO Act, I understand, like the majority here, that we derive the meaning of statutes, of course, by looking to the text itself, as understood in its context. *See Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022); *see also Tsuji v. Fleet*, 366 So. 3d 1020, 1025 (Fla. 2023).

Florida's RICO Act provides, in relevant part, that "[i]t is unlawful for any person employed by, or associated with, any *enterprise* to conduct or participate, directly or indirectly, in such *enterprise* through a *pattern of racketeering activity*." § 895.03(3), Fla. Stat. (emphasis added to highlight defined terms).

Reiterating the definitions cited by the majority above, Florida's RICO Act provides:

> "Enterprise" means any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental, as well as other, entities. A criminal gang, as defined in s. 874.03, constitutes an enterprise.

§ 895.02(5), Fla. Stat. (2021).

> "Pattern of racketeering activity" means engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurred after October 1, 1977, and that the last of such incidents occurred within 5 years after a prior incident of racketeering conduct.

24

§ 895.02(7), Fla. Stat. (2021).

> "Racketeering activity" means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit: [certain enumerated offenses].[*]

§ 895.02(8), Fla. Stat. (2021). The question of whether Florida's RICO Act applies to Wester's crime turns on the plain language of these statutes.

To begin with, § 895.03(3) provides that it is unlawful for "*any person* employed by, or associated with, any enterprise" to engage in the forbidden activity. The Legislature's use of "any person" indicates that the statute may be applied to a single individual who works through an enterprise to commit certain crimes. *Id*. *See* Any, Merriam–Webster Online Dictionary, www.merriam-webster.com/ dictionary/any (defining "any" as "one or some indiscriminately of whatever kind [or] quantity.").

Florida's RICO Act defines "enterprise" to include "illicit as well as licit enterprises and governmental, as well as other, entities." § 895.03(3), Fla. Stat. The Florida Supreme Court describes two requirements for proving "enterprise": "(1) an ongoing organization, formal or informal, with a common purpose of engaging in a course of conduct, which (2) functions as a continuing unit." *Gross v. State*, 765 So. 2d 39, 44–45 (Fla. 2000) (citing *United States v. Turkette,* 452 U.S. 576, 583 (1981)). None of these statutes requires that the enterprise itself possess the same criminal intentions as the defendant. Rather, the Act encompassed Wester's behavior insofar as he was "employed by . . . [the Sheriff's Office], a licit . . . governmental . . . entit[y] . . . [and] participate[d], directly or indirectly, in [the Sheriff's Office] through [engaging in at least two incidents of racketeering conduct that have the same or similar intents, results,

---

[*] Florida's broad definition of racketeering lists over fifty qualifying categories of crimes as well as crimes listed in the Federal RICO Act. *See* § 895.02(8), Fla. Stat. (including "[a]ny conduct defined as 'racketeering activity' under 18 U.S.C. s. 1961(1)").

accomplices, victims, or methods of commission]." §§ 895.03(3), § 895.02(5), (7), Fla. Stat.

My core disagreement with Wester's argument and the majority's opinion is that the statute doesn't require the enterprise or other officials to have been purposefully complicit in Wester's scheme. Rather, so long as "any person"—Wester himself in this case—participates in an enterprise "through a pattern of racketeering activity," the Act reaches the actions. § 895.03(3), Fla. Stat. Wester could be prosecuted lawfully for racketeering, even when the Sheriff's Office didn't know about or benefit from his crimes, because he used the Sheriff's Office and acted through his police work to carry out his scheme. *See Doorbal v. State*, 983 So. 2d 464, 483 (Fla. 2008) (recognizing that "[t]o satisfy the "enterprise" element of the RICO statute, the State must demonstrate that a defendant acted in concert with . . . [an] entity"). More specifically, it is undisputed that the Sheriff's Office employed Wester and vested him with the full authority of a deputy sheriff to enforce the criminal and traffic laws in Jackson County on its behalf. Wester leveraged this authority as well as the tools of the Sheriff's Office—patrol car, lights, uniform, badge, arrest authority, handcuffs, jail, official paperwork, etc.—to commit a series of crimes that were only successful because of Wester's employment and association with the Office. It vested governmental authority in Wester to do what he did—to make traffic stops, conduct vehicle searches, and make arrests that activated the entire criminal justice system in Jackson County against his victims—the Sheriff's Office jailed Wester's victims as lawbreakers, the State Attorney's office prosecuted them, and courts administered their cases. In other words, Wester, while "being employed by, [and] associated with [the Sheriff's Office,] conduct[ed] or participate[d], directly or indirectly, in [the Sheriff's Office] through a pattern of racketeering activity." § 895.03(3), Fla. Stat.

Wester contends that the definition of "enterprise" in the racketeering statute requires additional purposeful bad actors from the Sheriff's Office. But Wester duped the Office and criminal justice system into carrying out his scheme and that, too, qualifies as racketeering under the statute. I don't see that a multi-actor, *purposeful* complicity requirement exists in the racketeering

statute. Again, § 895.03(3) criminalizes the acts of "any person" employed by and "any enterprise," who participates in the enterprise via specific criminal acts. These definitions fit Wester's crimes, insofar as he leveraged Sheriff's Office authority and the county criminal justice system against his victims. The statute says nothing of others in the Sheriff's Office having to be purposefully complicit before Wester can be prosecuted for racketeering.

Several similar federal racketeering cases confirm that law enforcement agencies can be considered "enterprises" in contexts like this one. *See Gross*, 765 So. 2d at 42–43 (noting that "Florida courts have looked to the federal courts for guidance in construing RICO provisions"). In *United States v. Ruiz*, 905 F.2d 499, 501 (1st Cir. 1990), for example, an officer and co-defendant obtained cocaine from drug traffickers in return for allowing them to deal drugs. After a racketeering conviction, Officer Ruiz appealed and argued that his crimes did not show "racketeering activity" because they lacked complicity by the police department-enterprise. *Id.* at 504. The federal court disagreed, however, because Ruiz had successfully employed the authority, tools, and activities of the police department in furtherance of his crimes: "Ruiz's acquisition of cocaine, and his *quid pro quo* conduct, were inextricably intertwined with his authority and activities as an employee of the [police department] . . . all made possible through, or facilitated by, his employment." *Id.* As in Wester's case, "Ruiz had set up shop and was engaged in a regular way of doing illicit business under the aegis of the enterprise." *Id.* at 505.

Perhaps the closest case on the facts to this one is *United States. v. Shamah*, 624 F.3d 449, 451 (7th Cir. 2010). Shamah was a police officer who stole money and drugs from drug dealers and then planted the drugs on individuals during subsequent stops. *Id.* at 452. After a jury convicted Shamah of racketeering, he argued on appeal that his conviction must be reversed because police department management wasn't involved with his crimes. *Id.* In affirming Shamah's conviction, the Seventh Circuit noted that the federal RICO act encompasses situations where a police department is operating normally and lawfully but is used by an officer-criminal to further criminal activities. *Id.* at 455. Similar to Wester, Shamah had great deal of responsibility to operate and

direct police department affairs on the street. *Id.* He manipulated this power "to transform[] legitimate police functions into arms of his illegal endeavors. He usurped the department's identity and turned it into a criminal enterprise hiding behind a facade of justice." *Id.* Thus, the Seventh Circuit concluded that Shamah had acted in concert with the police department via his authority to operate and manage "integral duties of the police department's daily affairs" in furtherance of his scheme. *Id. See also United States v. Welch*, 656 F.2d 1039, 1061 (5th Cir. 1981) (noting that the phrase "through a pattern of racketeering activity" doesn't require the enterprise to benefit from the racketeering activities but only for there to be "a relation between the predicate crime and the affairs of the enterprise").

In this case, as in these federal cases, Wester's prosecution showed a definitive nexus between the defendant, the enterprise, and the pattern of racketeering activity. Indeed, Wester could only have pulled off his crimes by employing the authority and tools of the Sheriff's Office. As a deputy sheriff, Wester exercised his authority to direct and control the department's affairs and to channel its authority by making traffic stops, arresting his victims, and causing them to be charged and prosecuted for phantom crimes. As in *Shamah*, "[h]e usurped the department's identity, and turned it into a criminal enterprise hiding behind a facade of justice." 624 F.3d at 455.

Because Florida's RICO Act expressly applies to "any person" who did what Wester did via the Sheriff's Office enterprise, I would affirm Wester's racketeering conviction.

––––––––––––––––––––––––––––

Michael Ufferman, Michael Ufferman Law Firm, P.A., Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Daren L. Shippy, Assistant Attorney General, Tallahassee, for Appellee.